INSURITY, INC. f/k/a PRC
Corp., Plaintiff,

v.

MUTUAL GROUP, LTD., Defendant.

No. CIV.3:02 CV 1665 (DJS/TPS).

United States District Court,
D. Connecticut.

Jan. 13, 2003.

Donald E. Frechette, William E. Murray, Edwards & Angell, Hartford, CT, for Insurity, Inc.

James T. Shearin, Pullman & Comley, Bridgeport, CT, Gwen P. Weisberg, Pullman & Comley, Hartford, CT, for Mutual Group, Ltd.

## INTERIM RULING ON PENDING MOTION

SMITH, United States Magistrate Judge.

This case raises interesting questions about the inter-relationship between Conn. Gen.Stat. § 52–278a *et seq.* and Conn. Gen. Stat. § 52–422,[1] and the procedures contemplated by the respective statutes. Although the day may come when the court must address several related legal questions that the parties agree are lurking in the circumstances of the case, for now the court need only decide one pivotal, threshold issue. That issue is whether a party to a pending arbitration who comes before the court seeking pendente lite relief pursuant to § 52–422 may seek, and in an appropriate case obtain, an order requiring a disclosure of assets. The court concludes that it may, and orders such a disclosure in this case. The court also concludes that in appropriate circumstances, such as those now before the court, such an order may even issue under Conn. Gen.Stat. § 52–422 without the necessity of a *prior* probable cause determination.

---

1. Conn. Gen.Stat. § 52–422 states:

At any time before an award is rendered pursuant to an arbitration under this chapter, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when said court is in session, any judge thereof, upon application of any party to the arbitration, may make forthwith such order or decree, issue such process and direct such proceedings as may be necessary to protect the rights of the parties pending the rendering of an award and to secure the satisfaction thereof when rendered and confirmed.

## I.

The parties have prepared extensive stipulations as to the facts. The proposed stipulations differ in some respects, but the differences need not be reconciled at this point. The parties appear to be in agreement as to the basic facts which are important for present purposes. These facts are as follows.

This case is in federal court pursuant to diversity jurisdiction. 28 U.S.C. § 1332. The dispute arises out of a contract between plaintiff Insurity's predecessor, PRC Corporation, and the defendant Mutual Group, Limited. The contract provided for plaintiff's development and licensing of software to enable Mutual Group's subsidiary, Legion Insurance Company ("Legion"), to write worker compensation policies.

Before the software system was delivered to the satisfaction of the defendant, however, Legion was placed into rehabilitation by the Pennsylvania Insurance Department, which has operated the company as a Rehabilitator since April 1, 2002. Prior to its being taken over by the Insurance Commissioner, Legion had paid $889,684.08 pursuant to the agreement, but it has paid nothing since that date. Alleging breach of contract, plaintiff claims present and future damages substantially in excess of $1 million.

The agreement between the parties contained an arbitration clause. The plaintiff filed a demand for arbitration on August 1, 2002. An amended demand for arbitration was filed by the plaintiff September 27, 2002. The American Arbitration Association has not yet scheduled a date for the arbitration. Although the arbitration has not begun, the defendant has signified that it is ready and willing to arbitrate. The parties are thus in agreement that for present purposes the arbitration is pending.

Insurity brought this action in the Superior Court for the Judicial District of Hartford, but the defendant removed it to this court on September 18, 2002. 28 U.S.C. § 1441(a). The plaintiff filed a Motion for Relief Pendente Lite pursuant to Conn. Gen.Stat. § 52–422. This motion was heard by the undersigned December 17, 2002. The lawyers are in agreement that the issue which must be determined first is whether the court, acting pursuant to § 52–422, may order the defendant to disclose its assets.

## II.

A good place to begin an analysis is with the language of statute itself. The statute states:

> At any time before an award is rendered pursuant to an arbitration under this chapter, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when said court is in session, any judge thereof, upon application of any party to the arbitration, may make forthwith such order or decree, issue such process and direct such proceedings as may be necessary to protect the rights of the parties pending the rendering of an award and to secure the satisfaction thereof when rendered and confirmed.

Conn. Gen.Stat. § 52–422.

Here, it is clear that an arbitration award has not yet been rendered. It is also clear that, by virtue of this statute, and the case's removal to federal court, this court possesses the same power that a Connecticut Superior Court would have to act on the application of Insurity, which is a party to an arbitration. Rule 64 of the Federal Rules of Civil Procedure, moreover, directs this court to apply the sub-

stantive law of the State of Connecticut and federal procedural rules in these proceedings. Fed.R.Civ.P. 64(2). Rule 62(1) accommodates the reference of this matter to the undersigned as a non-dispositive motion. 28 U.S.C. § 636(b)(1)(A).

The remaining question, then, appears to be whether issuance of an order requiring the disclosure of assets is authorized by the statutory language that empowers a court to "make forthwith such order or decree, issue such process and direct such proceedings as may be necessary to protect the rights of the parties pending the rendering of an award." Indeed, whether the foregoing language authorizes the issuance of an order to disclose assets is the only issue that need be decided in this interim ruling.

### III.

Both sides to this case appear to agree that considerations of judicial economy, cost, and common sense all suggest that, before unnecessary time and expense are wasted conducting a more protracted evidentiary hearing as to probable cause *vel non* for the granting of a prejudgment remedy, an inquiry should first be conducted whether assets even exist, where they are located, and what their value is. If there are no assets of substantial value, it is questionable whether the plaintiff will pursue its request for writs of garnishment and attachment, and arguably *injunctive* ancillary orders requiring or prohibiting the performance of certain acts by the defendant and its officers and employees conceivably involving real and personal property outside Connecticut. Thus, the

procedure that the parties suggest seems aimed at securing "the just, speedy, and inexpensive determination" of the action before the court. Rule 1, Fed, R. Civ. P.[2]

There are some technical problems with the court's doing this, but they are not insurmountable. A motion for an order of disclosure of assets is normally brought pursuant to Conn. Gen.Stat. § 52–278n in conjunction with an application for a prejudgment remedy under Conn. Gen.Stat. § 52–278a. The wording of § 52–278n(c) further suggests that a motion for an order of disclosure under § 52–278n may be granted only *after* a probable cause determination is made in favor of the issuance of such a remedy. Here, of course, the parties suggest that the probable cause determination and the other thorny related legal issues that defendant has raised be deferred until after the defendant has disclosed what, if any, assets it has. Depending on what is disclosed, there may be no further proceedings.

To the extent Conn. Gen.Stat. § 52–278n(c) arguably confers on the parties a *right* that a probable cause determination precede the granting of an order of disclosure, the right is procedural, not substantive. The order in which a federal court addresses applications for relief is inherently procedural, and thus the Federal Rules of Civil Procedure control, and arguably provide ample justification for addressing the pending motion for a order of disclosure first, as the parties have asked. Even if this were not so, however, it appears that by stipulating that the court address the issue disclosure first the par-

---

**2.** Rule 1 states:

These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81. They shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.

Rule 81(c), Fed.R.Civ.P., in turn, provides that "These rule shall apply to civil actions removed to the United States districts courts from state courts and govern procedure after removal."

ties have voluntarily waived whatever right they may have had under § 52–278n(c) that the probable cause issue be decided first. Surely this right is waivable. *Ryan v. Fairchild Finance Corp.*, 1995 WL 243344 (Conn.Super. April 17, 1995).

Still another reason why the court may address the order of disclosure issue first, as the parties have asked, is that the plaintiff is not proceeding before this court under Conn. Gen.Stat. § 52–278a *et seq.* Rather, the court is proceeding here under Conn. Gen.Stat. § 52–422, an entirely different statute which applies when there is a pending arbitration, and a party to that arbitration comes before the court asking for relief that is allegedly necessary to protect that party's rights. This distinction is not a minor one.

Conn. Gen.Stat. § 52–278a deals with prejudgment remedies in civil actions. Most of these action are resolved by litigation in the courts. This is where judgments are entered and where is makes sense to speak of pre-judgment remedies, and to use other nomenclature associated with litigation in the courts. When a case pending in court is found to be subject to arbitration, the matter is referred to arbitration and the civil action must be stayed pursuant to Conn. Gen.Stat. § 52–409.[3] *Goodson v. State*, 232 Conn. 175, 653 A.2d 177 (1995).

Conn. Gen.Stat. § 52–422, on the other hand, envisions completely different circumstances. Its focus is not upon litigation in the courts, but on arbitration. It provides an incentive to arbitrate by allowing a party to a pending arbitration to apply to the court for a discrete type of judicial relief: relief that is necessary to protect the rights of the parties pending the award and satisfaction thereof. Conn. Gen.Stat. § 52–422 neither mentions prejudgment remedies nor refers to Conn. Gen.Stat. § 52–278a *et seq.* It is also silent with respect to orders for disclosure of assets and probable cause determinations, and makes no mention of Conn. Gen. Stat. § 52–278n. Conn. Gen.Stat. § 52–422 is distinct from Conn. Gen Stat. § 52–278, and is designed to vest the court with broad power to provide parties in arbitration some protection against the dissipation of assets while the proceedings are pending. Thus, it is a stretch to argue that the strictures of Conn. Gen Stat. § 52–278n (a) and (c), limit what a court can do under Conn. Gen.Stat. § 52–422.

This is not to suggest that Conn. Gen. Stat. § 52–278a *et seq.*, the cases and analysis thereunder, and the terminology that one normally associates with pre-judgment remedies are irrelevant to an analysis under Conn. Gen.Stat. § 52–422, for they are not. Rather, they may be extremely helpful to a court reasoning by analogy to § 52–422, much the same way a federal court develops federal common law by looking to state law sources that are thoughtful and persuasive, though not binding. Hence, in deciding whether the court has the power to, and should order a disclosure of assets in this case, the court is not looking to Conn. Gen.Stat. § 52–278a or § 52–278n as its source of authority, but instead to § 52–422, Rule 64, and applicable federal statutes.

---

**3.** Conn. Gen. Stat § 52–409 provides:

If any action for legal or equitable relief is brought by any party to a written agreement to arbitrate, the court in which the action or proceeding is pending, upon being satisfied that any issue involved in the action or proceeding is referable to arbitration under the agreement, shall, on motion of any party to the arbitration agreement, stay the action or proceeding until an arbitration has been had in compliance with the agreement, provided the person making application for the stay shall be ready and willing to proceed with the arbitration.

## IV.

The court is fortunate to have the assistance of two very able counsel in this case: William E. Murray, Esquire of Edwards & Angell, representing the plaintiff; and James T. Shearin, Esquire, of Pullman & Comley, representing the defendant. So far, the litigative skill, quality of advocacy, and level of civility demonstrated by these two adversaries has been exemplary, and in the highest tradition of the legal profession. On December 17, 2002, the court held a hearing and oral argument on some of the many interesting issues presented in this case. Counsels' competing arguments are set forth in a transcript of those proceedings. (*See* Transcript, Dkt. # 23).

Though plaintiff concedes that this proceeding is brought pursuant to § 52–422, and that § 52–422 does not delineate any specific remedy, it urges that the language of § 52–422 vests the court with broad equitable discretion, broad enough to allow entry of an order compelling defendant to disclose its assets. According to plaintiff, the staying under § 52–409 of a civil action—that is, an action at law—does not prevent the court in the exercise of its equitable powers from allowing under § 52–422 a form of relief which happens also to be enumerated in § 52–278n.

In support of this general proposition, plaintiff points to *Koeck v. Harris,* No. CV000377121S, 2000 WL 1770063, 2000 Conn.Super. LEXIS 3517 (Conn.Super.Ct. Oct.27, 2000). In that case, a civil action was pending and a motion for a prejudgment remedy under § 52–278 was before the court; the defendant successfully moved to stay the action pursuant to § 52–409; the plaintiff responded by filing a motion for relief pursuant to § 52–422. Rejecting defendant's motion to dismiss, Judge Skolnick noted that the court had subject matter jurisdiction because an arbitration was then pending. The court

went on to grant a prejudgment remedy to the plaintiff "because there is probable cause that a judgment will be rendered in favor of the plaintiff in this matter." *Koeck, supra,* 2000 WL 1770063 *4, 2000 LEXIS 3517 *13.

The present case, of course, is different from *Koeck* in the respect that here the court, for purposes of making this interim ruling, has not yet made a ruling on the probable cause issue. While the record in *Koeck* was such that Judge Skolnick could easily make a probable cause determination, here the issues are more elusive and the facts sufficiently more complicated that it makes sense to defer a probable cause determination until the parties know whether there are sufficient assets for to warrant going forward with such a determination. Nevertheless, *Koeck* is of some value here since the *Koeck* Court, in a proceeding exclusively under § 52–422 "borrowed" or reasoned by analogy from § 52–278 to allow under the former a type of remedy specified only by the latter.

The defendant, on the other hand, while agreeing that the issue of disclosure of assets should be treated first in this case for reasons of cost and economy, argues that authority to actually issue an order requiring disclosure of assets in conjunction with other remedies specified under § 52–278a should not be read into § 52–422. The defendant correctly notes that by an earlier endorsement pursuant to § 52–409, this court stayed proceedings to the extent they were based directly on § 52–278a. Thus, defendant, maintains that "the question squarely before the court is whether or not 52–422 permits a disclosure of assets, other than through incorporation of 52–278n." (Tr. 6)

The defendant further argues that *Goodson v. State,* 232 Conn. 175, 653 A.2d 177 (1995), "the only Supreme Court case that talks about 52–422" (Tr. 6), militates

against plaintiff's arguments by stressing that the statute strictly prescribes the conditions under which relief can be granted. Specifically, the court states:

An application for an order pendente lite pursuant to § 52–422 is a special statutory proceeding. "The statute confers a definite jurisdiction upon a judge and it defines the conditions under which such relief may be given. . . . In such a situation jurisdiction is only acquired if the essential conditions prescribed by statute are met. If they are not met, the lack of jurisdiction is over the subject-matter and not over the parties." (Internal quotation marks omitted.)

*Goodson, supra,* 232 at 179, 653 A.2d 177 (citations omitted). While one can argue that the foregoing language cuts against the broad reading advanced by the plaintiff, the court's observations were made in the context of a challenge to subject matter jurisdiction. The problem before the court was that the trial court had entered relief under § 52–422 when there was no pending arbitration. This was troublesome because, as the *Goodson* Court stated, "[b]y its express terms, § 52–422 allows the trial court to issue an order only 'upon application of any party to the arbitration. . . .' Thus, a pending arbitration is an essential condition that must exist before § 52–422 may be invoked." *Goodson, supra,* 232 Conn. at 179, 653 A.2d 177. Here, an arbitration is pending, so the conditions for the statute's operation have been satisfied. That is all *Goodson* requires.

Goodson's dicta describing § 52–422 as creating a "special statutory proceeding" that strictly "defines the conditions under which such relief may be given," is nevertheless helpful. It suggests that § 52–422

must be interpreted as the Legislature intended. The best indicator of the Legislature's intent is the language it used in § 52–422. That language empowers the court "to make such order or decree, issue such process, and direct such proceedings *as may be necessary to protect the rights of the parties. . . .*" It is true, as defendant argues, that the legislature could have, but deliberately refrained from enumerating "an order to disclose assets" as one type of relief that a court could fashion under § 52–422. But the court concludes that the Legislature's refraining from specifically enumerating such an order is not a manifestation of intent to withhold from the court the authority to issue such an order under § 52–422, where it is appropriate. Thus, not only may the court issue an order for disclosure of assets under Conn. Gen.Stat. § 52–422, it may do so *prior to,* and *independent of,* a probable cause determination. This is because the language of Conn. Gen.Stat. § 52–422 vests the court with broad power and discretion, and envisions proceedings separate and distinct from those under Conn. Gen.Stat. § 52–278a *et seq.,* though some coincidental similarity in nomenclature is inevitable.

### V.

Accordingly, it is ordered that the defendant disclose its assets to the plaintiff. That disclosure shall take place forthwith in the form of an oral deposition[4], to be conducted at a time and place mutually convenient to counsel, pursuant to Rules 26 and 30, Fed.R.Civ.P. Further rulings will be issued if necessary on the other issues raised by the pending motion. This is a dispositive ruling. The parties may timely appeal this to an Article III judge

---

**4.** Counsel are free to agree to an alternative method of disclosure. Once disclosure has been made, and a decision has been reached

whether further proceedings, including a determination of probable cause, are necessary, counsel shall advise the court accordingly.

for review pursuant to the "clearly errone-
ous" or "abuse of discretion" standard. 28
U.S.C. § 636(b)(1)(A).