## GAIL A. CAHALY *v.* BENISTAR PROPERTY EXCHANGE TRUST COMPANY, INC., ET AL.
### (SC 16892)

Sullivan, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

Argued November 24, 2003—officially released March 23, 2004

*Richard S. Order*, with whom were *Eric D. Beal* and, on the brief, *Barbara A. Frederick* and *Thomas W. Edgington*, for the appellants (named defendant et al.).

*Seth Jacoby*, for the appellee (plaintiff).

*Opinion*

NORCOTT, J. The defendants, Benistar Property Exchange Trust Company, Inc. (Benistar Property), Benistar, Ltd., and Daniel E. Carpenter, appeal, upon our grant of certification, from the judgment of the Appellate Court affirming the trial court's decision granting the application filed by the plaintiff, Gail A. Cahaly, for a prejudgment remedy against the defendants. *Cahaly* v. *Benistar Property Exchange Trust Co.*, 73 Conn. App. 267, 269, 812 A.2d 1 (2002). The defendants claim that the Appellate Court improperly

affirmed the trial court's decision because: (1) the prejudgment remedy statutes, General Statutes § 52-278a et seq., do not provide the Superior Court with the authority to grant a prejudgment remedy based on an action pending in the courts of another state; (2) as a matter of law, the plaintiff failed to establish probable cause to support her application for a prejudgment remedy; and (3) as a matter of law, the plaintiff's complaint does not support the granting of a prejudgment remedy against Carpenter in his individual capacity. In response, the plaintiff claims that nothing in the statutory scheme governing prejudgment remedies prohibits a plaintiff in an out-of-state matter from securing the Connecticut assets of a defendant when the plaintiff anticipates filing her out-of-state judgment in Connecticut. We agree with the defendants' first claim.[1] Accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following relevant facts and procedural history. "Benistar Property is a wholly owned subsidiary of Benistar, Ltd. Benistar, Ltd., maintains Connecticut offices in Stamford and Simsbury. Carpenter is the chairman and secretary of Benistar Property and the chairman and secretary of Benistar, Ltd. Carpenter is a Connecticut resident. Benistar Property was in the sole business of serving as an intermediary for like-kind exchanges of property pursuant to 26 U.S.C. § 1031 of the Internal Revenue Code.[2] Carpenter's role in Benistar Property was to manage clients' proceeds from the sales of properties until further directed by the clients to return the

---

[1] Because we agree with the defendants' first claim, it is unnecessary for this court to address their remaining two claims on appeal.

[2] "[Section 1031 of title 26 of the United States Code] is an exception to the general rule requiring recognition of gain or loss upon the sale or exchange of property. Under 26 U.S.C. § 1031 (a), if property held for productive use is exchanged for like-kind property, the taxable gain is not realized until the acquired property is disposed of." *American International Enterprises, Inc.* v. *Federal Deposit Ins. Corp.*, 3 F.3d 1263, 1265 n.3 (9th Cir. 1993).

proceeds or to apply the proceeds to the purchase of new property.

"In October, 2000, Carpenter opened two accounts, a money market account and a trading account, with PaineWebber, Inc. (PaineWebber), under the name of Benistar Property Exchange. Carpenter instructed PaineWebber that Benistar Property would wire funds into the money market account, some of which would later be transferred to the trading account. In December, 2000, the balance in the trading account fell into a negative balance, and PaineWebber seized the money market funds to pay for the positions it covered in the trading account.

"The plaintiff, in an exchange fee agreement dated November 8, 2000, had entered into a written contract with Benistar Property that provided that the plaintiff's funds would be held and invested in either a 3 percent per annum or a 6 percent per annum PaineWebber account. The 3 percent account allowed for liquidation by seventy-two hours written notice, and the 6 percent account allowed for liquidation by thirty days written notice. The plaintiff signed over a check in the amount of $2,412,230 to Benistar Property for investment. Since November 8, 2000, $1,420,000 of the plaintiff's money has been returned to her, leaving a balance of $992,230, plus interest. Benistar Property failed to return these funds to the plaintiff.

"In a complaint dated January 21, 2001, the plaintiff filed suit against Benistar Property, Benistar, Ltd., Carpenter, Martin L. Paley and PaineWebber in Massachusetts Superior Court. In addition to the plaintiff, there are several other plaintiffs in the Massachusetts action who claim losses totaling nearly $9 million. . . . On February 2, 2001, the Massachusetts Superior Court granted the plaintiffs' motion for prejudgment security. As of . . . July 18, 2001 . . . the assets secured by the

Massachusetts attachment totaled only about $500,000 in value for the $9 million in claims of all plaintiffs. Additionally, they had attached a Travelers Insurance Company bond in the amount of $5 million. However, Travelers disputes its liability claiming mismanagement on the part of the insured defendants.

"On January 30, 2001, the plaintiff filed an application for prejudgment remedy in the Hartford Superior Court, seeking an attachment of $1.1 million against the defendants.[3] The defendants filed a motion to dismiss or to stay the plaintiff's application, arguing that a prejudgment attachment was improper because of the prior pending action doctrine and because there was no suit pending or contemplated in Connecticut. Following the denial of the defendants' motion to dismiss or stay the proceedings, the court held a probable cause hearing and [on May 29, 2001] granted the application for attachment in the amount of $500,000, with a maximum attachment against Carpenter in the amount of $250,000." Id., 269–71.

On August 13, 2001, however, the plaintiff filed a motion to stay the Connecticut proceedings "until a complete determination by the Massachusetts Superior Court of the litigation pending there" between the plaintiff and the defendants. On October 9, 2001, this motion was granted by the trial court.

On appeal to the Appellate Court, the defendants claimed that "the trial court improperly (1) granted the application because the prejudgment remedy statutes . . . do not contemplate a plaintiff, in an out-of-state action, attaching a defendant's Connecticut assets prior to the entry of judgment in the out-of-state case, (2)

---

[3] One of the Massachusetts defendants, PaineWebber, was not named in the plaintiff's Connecticut prejudgment remedy application. In addition, the plaintiff's Connecticut application for prejudgment remedy was later withdrawn as against the defendant Martin L. Paley.

denied the defendants' motion for a stay prior to the granting of the application for a prejudgment remedy, (3) granted a prejudgment remedy against Carpenter that is inconsistent with the prior orders of a Massachusetts court, and (4) granted a prejudgment remedy against Benistar, Ltd., and Carpenter without a demonstration by the plaintiff that she will have the ability to pierce the corporate veil." Id., 268–69. The Appellate Court rejected all of the defendants' claims and affirmed the decision of the trial court. Id., 285. Thereafter, we granted the defendants' petition for certification for appeal, limited to the following question: "Did the Appellate Court properly affirm the trial court's granting of a prejudgment remedy against the defendants . . . ?" *Cahaly* v. *Benistar Property Exchange Trust Co.*, 262 Conn. 925, 814 A.2d 378 (2002).

We begin by setting forth the appropriate standard of review. In the present case, the defendants are challenging the trial court's interpretation of the prejudgment remedy statutes, General Statutes § 52-278a et seq. Issues of statutory construction raise questions of law, over which we exercise plenary review.[4] *Commissioner of Transportation* v. *Kahn*, 262 Conn. 257, 272, 811 A.2d 693 (2003). "The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory

---

[4] Our legislature has recently enacted Public Acts 2003, No. 03-154, § 1, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." This case does not implicate Public Act 03-154 because the relevant statutory text and the relationship of that text to other statutes is not "plain and unambiguous . . . ." Accordingly, our analysis is not circumscribed to an examination of text alone, but rather properly may consider the various other sources helpful in the ascertainment of statutory meaning.

language as applied to the facts of this case, including the question of whether the language actually does apply. In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . *Schiano* v. *Bliss Exterminating Co.*, 260 Conn. 21, 34, 792 A.2d 835 (2002)." (Internal quotation marks omitted.) *Spears* v. *Garcia*, 263 Conn. 22, 27–28, 818 A.2d 37 (2003).

We are also mindful of "the principle that prejudgment remedies are in derogation of the common law and, therefore, that prejudgment remedy statutes must be strictly construed . . . ." *Feldmann* v. *Sebastian*, 261 Conn. 721, 725, 805 A.2d 713 (2002); see also *Vitanza* v. *Upjohn Co.*, 257 Conn. 365, 381, 778 A.2d 829 (2001) ("[i]n determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope" [internal quotation marks omitted]).

"As with all issues of statutory interpretation, we look first to the language of the statute." (Internal quotation marks omitted.) *Spears* v. *Garcia*, supra, 263 Conn. 28–29. The defendants claim that there is nothing in the language of the prejudgment remedy statutes that permits relief being granted in a Connecticut action seeking to enforce a potential foreign judgment. To the contrary, the plaintiff claims that there is no language in the prejudgment remedy statutes that prohibits relief being granted on an action seeking to enforce a potential foreign judgment. We find the defendants' argument persuasive.

Under General Statutes § 52-278c (a),[5] "any person desiring to secure a prejudgment remedy[6] shall attach his proposed unsigned writ, summons and complaint to . . . (1) [a]n application, directed to the Superior Court to which the action is made returnable, for the prejudgment remedy requested . . . [and] (2) [a]n affidavit . . . setting forth a statement of facts sufficient to show that there is probable cause that a judgment in the amount of the prejudgment remedy sought . . . will be rendered in the matter in favor of the plaintiff . . . ."

Similarly, General Statutes § 52-278d (a)[7] provides that if, after a hearing, the court finds that, "upon con-

[5] General Statutes § 52-278c (a) provides in relevant part: "Except as provided in sections 52-278e and 52-278f, any person desiring to secure a prejudgment remedy shall attach his proposed unsigned writ, summons and complaint to the following documents:

"(1) An application, directed to the Superior Court to which the action is made returnable, for the prejudgment remedy requested;

"(2) An affidavit sworn to by the plaintiff or any competent affiant setting forth a statement of facts sufficient to show that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff;

"(3) A form of order that a hearing be held before the court or a judge thereof to determine whether or not the prejudgment remedy requested should be granted and that notice of such hearing complying with subsection (e) of this section be given to the defendant;

"(4) A form of summons directed to a proper officer commanding him to serve upon the defendant at least four days prior to the date of the hearing, pursuant to the law pertaining to the manner of service of civil process, the application, a true and attested copy of the writ, summons and complaint, such affidavit and the order and notice of hearing . . . ."

[6] General Statutes § 52-278a (d) defines " '[p]rejudgment remedy' " as "any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment but shall not include a temporary restraining order."

[7] General Statutes § 52-278d (a) provides: "The defendant shall have the right to appear and be heard at the hearing. The hearing shall be limited to a determination of (1) whether or not there is probable cause that a judgment

sideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, [there is probable cause that] a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought . . . the prejudgment remedy ·. . . shall be granted . . . ."

Therefore, as an initial matter, in order to obtain a prejudgment remedy a plaintiff must file an "unsigned writ, summons and complaint" with the Superior Court. General Statutes § 52-278c (a). Attached to the writ, summons and complaint must be the plaintiff's "application, directed to the Superior Court to which the action is made returnable, for the prejudgment remedy requested . . . ." General Statutes § 52-278c (a) (1). Subsection (b) of § 52-278c provides a sample application, and further provides that a plaintiff's application for a prejudgment remedy "shall be substantially in the

in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff, (2) whether payment of any judgment that may be rendered against the defendant is adequately secured by insurance, (3) whether the property sought to be subjected to the prejudgment remedy is exempt from execution, and (4) if the court finds that the application for the prejudgment remedy should be granted, whether the plaintiff should be required to post a bond to secure the defendant against damages that may result from the prejudgment remedy or whether the defendant should be allowed to substitute a bond for the prejudgment remedy. If the court, upon consideration of the facts before it and taking into account any defenses, counterclaims or set-offs, claims of exemption and claims of adequate insurance, finds that the plaintiff has shown probable cause that such a judgment will be rendered in the matter in the plaintiff's favor in the amount of the prejudgment remedy sought and finds that a prejudgment remedy securing the judgment should be granted, the prejudgment remedy applied for shall be granted as requested or as modified by the court. The court shall not grant the prejudgment remedy if the prejudgment remedy or application for such prejudgment remedy was dismissed or withdrawn pursuant to the provisions of section 52-278j."

[same] form . . . ."[8] According to the terms of the sample application, the plaintiff shall represent that he or she "is about to commence an action against [the defendant] . . . pursuant to the *attached proposed unsigned Writ, Summons, Complaint and Affidavit*." (Emphasis added.) General Statutes § 52-278c (b). Therefore, under the clear language and structure of § 52-278c, a plaintiff's application for a prejudgment remedy is not a stand alone pleading; rather, it is entirely dependent on the "action" set forth in the attached writ, summons and complaint. See also General Statutes § 52-278j (a) ("[i]f an application for a prejudgment remedy is granted but the plaintiff, within thirty days thereof, does not serve and return to court the writ, summons and complaint for which the prejudgment remedy was allowed, the court shall dismiss the prejudgment remedy").

Accordingly, the issue in the present case becomes, as Judge Schaller noted in his opinion concurring in the judgment of the Appellate Court, "whether the pre-

---

[8] General Statutes § 52-278c (b) provides in relevant part: "The application . . . shall be substantially in the form following:

"APPLICATION FOR PREJUDGMENT REMEDY

"To the Superior Court for the judicial district of . . . .

"The undersigned represents:

"1. That . . . . is about to commence an action against . . . . of . . . . (give name and address of defendant) pursuant to the attached proposed unsigned Writ, Summons, Complaint and Affidavit.

"2. That there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the applicant and that to secure the judgment the applicant seeks an order from this court directing that the following prejudgment remedy be granted to secure the sum of $ . . . .

"a. To attach sufficient property of the defendant to secure such sum:

"b. To garnishee . . . . , as he is the agent, trustee, debtor of the defendant and has concealed in his possession property of the defendant and is indebted to him.

"c. (Other Type of Prejudgment Remedy Requested.) . . ."

judgment remedy statutes are satisfied by attaching to the application an unsigned writ of summons and complaint that constitutes *a prospective action* in Connecticut that will be brought to enforce a foreign judgment, *prior to the foreign judgment's having been obtained.*"[9] (Emphasis added.) *Cahaly* v. *Benistar Property Exchange Trust Co.*, supra, 73 Conn. App. 286. We conclude that the statutes are not satisfied by such a prospective action. Put another way, the "action" referred to in § 52-278c (a) (1) must be an action that the plaintiff is about to bring in Connecticut upon which a Connecticut court will render judgment. It does not include a future judgment on an action that the plaintiff has filed or proposes to file in another state.

When a plaintiff brings a prospective action to enforce a judgment[10] based upon a *potential* foreign

[9] The Appellate Court framed the issue before it as whether "a plaintiff in an out-of-state action is . . . allowed to attach a defendant's Connecticut assets by way of § 52-278a et seq. to secure a judgment that the plaintiff might receive in a sister state." *Cahaly* v. *Benistar Property Exchange Trust Co.,* supra, 73 Conn. App. 271. Judge Schaller, in his opinion concurring in the judgment, framed the issue as "whether the prejudgment remedy statutes are satisfied by attaching to the application an unsigned writ of summons and complaint that constitute a prospective action in Connecticut that will be brought to enforce a foreign judgment, prior to the foreign judgment's having been obtained." Id., 286. We believe that Judge Schaller's formulation, with its focus on the validity of the Connecticut action supporting the application for prejudgment remedy, more properly states the issue before us on appeal.

[10] In the present case, the plaintiff appears to base her complaint on a common-law action on the foreign judgment. Although the Uniform Enforcement of Foreign Judgments Act, General Statutes § 52-604 et seq., provides the most expeditious method for enforcing a foreign judgment, Connecticut also continues to recognize the common-law action on the judgment. See General Statutes § 52-607 ("[t]he right of a judgment creditor to proceed by an action on the judgment . . . remains unimpaired"); *Moasser* v. *Becker,* 78 Conn. App. 305, 312, 828 A.2d 116, cert. denied, 266 Conn. 910, 832 A.2d 70 (2003) ("[o]ur courts have concluded . . . that the provisions of the [Uniform Enforcement of Foreign Judgments Act] are not exclusive, and a judgment creditor still may seek recognition of a foreign judgment by way of a common-law action on the judgment").

judgment, there is no possibility that a "judgment will be rendered in the matter in the plaintiff's favor" by the courts of Connecticut. General Statutes § 52-278d (a). This is true because in order for a plaintiff to enforce a foreign judgment in this state, it is elementary that the judgment must have been issued already in the foreign jurisdiction, and that the judgment must represent a final determination of the rights of the parties involved. See General Statutes § 52-604 (defining " 'foreign judgment' " as "any judgment, decree or order of a court of the United States . . . except one obtained by default in appearance or by confession of judgment"); *Hendrix* v. *Hendrix*, 160 Conn. 98, 104, 273 A.2d 890 (1970) ("[t]he judgment rendered in one state is entitled to full faith and credit only if it is a final judgment, and the judgment is final only if it is not subject to modification in the state in which it was rendered"); Black's Law Dictionary (7th Ed. 1997) (defining judgment as "court's final determination of the rights and obligations of the parties in a case"); 1 Restatement (Second), Conflict of Laws § 107 (1971) ("[a] judgment will not be recognized or enforced in other states insofar as it is not a final determination under the local law of the state of rendition"). Accordingly, without first having obtained a final judgment in a foreign jurisdiction that is immediately enforceable against a defendant, a plaintiff cannot bring an action in Connecticut to enforce that judgment. Since a plaintiff cannot bring an action to enforce a foreign judgment until that foreign judgment is obtained, a plaintiff likewise cannot base an application for a prejudgment remedy on an action to enforce a foreign judgment until that foreign judgment is obtained.

A contrary conclusion would lead to absurd results, and "we presume that the legislature intends sensible results from the statutes it enacts. . . . Therefore, we read each statute in a manner that will not thwart its

intended purpose or lead to absurd results." (Citation omitted; internal quotation marks omitted.) *Collins* v. *Colonial Penn Ins. Co.*, 257 Conn. 718, 728–29, 778 A.2d 899 (2001). As the defendant correctly contends, if a plaintiff were able to proceed on a Connecticut action seeking to enforce a potential foreign judgment, the defendant may default in the action. If the defendant defaults, the trial court would be unable to render judgment for the plaintiff because the foreign judgment that the action is seeking to enforce would not yet exist. Because the trial court cannot render judgment for the plaintiff "in the matter," then an action seeking to enforce a *potential* foreign judgment cannot satisfy the requirements of § 52-278c or § 52-278d.

Furthermore, the relevant legislative history reveals that in 1993 the legislature amended several sections of the prejudgment remedy statutes to require trial courts to consider defenses, counterclaims and setoffs in making probable cause determinations.[11] See, e.g., General Statutes § 52-278d (a) (trial court's "determination of (1) whether or not there is probable cause . . . [must take] into account any defenses, counterclaims or set-offs"). Once a defendant were able to present as a defense the fact that the plaintiff has not yet obtained the foreign judgment underlying the action on the judgment, then a trial court would be unable, as a matter of law, to find probable cause that that judgment would be rendered for the plaintiff in the matter. Without a finding of probable cause, a trial court cannot grant the plaintiff's application for a prejudgment remedy.

---

[11] For example, Public Acts 1993, No. 93-431, § 2, amended § 52-278d (a) (1) by replacing "whether or not there is probable cause to sustain the validity of the plaintiff's claim" with "whether or not there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or set-offs, will be rendered in the matter in favor of the plaintiff . . . ."

As the Appellate Court noted, "[t]he plaintiff filed her prejudgment remedy application with the goal of attaching the Connecticut assets of the defendants to protect those assets from dissipation before the final adjudication of her Massachusetts action; her ultimate goal is to succeed in the Massachusetts litigation and to register that judgment here. She admits that she has no intention of actually litigating her claim in Connecticut." *Cahaly* v. *Benistar Property Exchange Trust Co.*, supra, 73 Conn. App. 281. Nor could the plaintiff seek to litigate her claim here in Connecticut, because the only claim she set forth in her complaint was an "action to collect and/or enforce and/or secure the debt owing to her by the [d]efendants . . . ." This action is premised on the plaintiff's assertion in her single count complaint that she "is likely to obtain a judgment against [the defendants] in the amount of $992,230 plus accruing interest and costs" in the Massachusetts action.[12] In her demand for relief, the plaintiff requested "[t]hat the [c]ourt enter [j]udgment in favor of the [p]laintiff against the [d]efendants in accordance with the [o]rders of the Superior Court of Suffolk County, Commonwealth of Massachusetts . . . ." Thus, as the plaintiff has conceded both to the Appellate Court and in her complaint, her Connecticut action is completely dependent on a judgment being rendered in her favor in the Massachusetts action. Since that judgment has not yet been obtained, her action to enforce that judgment is not yet ripe. Cf. *Milford Power Co., LLC* v. *Alstom Power, Inc.*, 263 Conn. 616, 627, 822 A.2d 196 (2003) ("because the plaintiff's claims were contingent on the outcome of a dispute that had not yet transpired, and

---

[12] As the plaintiff stated in her application for a prejudgment remedy: "[T]here is probable cause that a judgment in the amount of the [p]rejudgment [r]emedy sought . . . will be rendered in the Massachusetts matter in favor of the [plaintiff]. Further . . . in order to secure the eventual enforcement of a judgment, the [plaintiff] seeks an order from this [c]ourt directing that the following [p]rejudgment [r]emedy be granted . . . ."

indeed might never transpire, the injury was hypothetical and, therefore, the claim was not justiciable"); *Harris* v. *Harris*, 14 Conn. App. 384, 387–88, 540 A.2d 1079 (1988) (plaintiff's Massachusetts judgment was entitled to full faith and credit under Connecticut law because it was final judgment).

The procedural posture of the present case further emphasizes why an action seeking to enforce a *potential* foreign judgment cannot support an application for a prejudgment remedy. Despite having her application for prejudgment remedy in this state granted, the plaintiff nevertheless filed a motion to stay this action "until a complete determination by the Massachusetts Superior Court of the litigation pending there" between the plaintiff and the defendants. As the plaintiff has once again conceded, there was simply no viable action for her to proceed upon in Connecticut until the final disposition of the Massachusetts action. Without a valid foreign judgment upon which to proceed, the plaintiff cannot demonstrate probable cause that a court will render "judgment . . . in the matter [namely, the action on the judgment filed in Connecticut] in favor of the plaintiff . . . ." General Statutes § 52-278d (a) (1). Accordingly, based on the language of the prejudgment remedy statutes, the rule of narrow construction that applies to such statutes, and our desire to read statutes in a manner that precludes absurd results, we conclude that our prejudgment remedy statutes do not provide authority for the issuance of a prejudgment remedy to secure an action brought to enforce a potential foreign judgment.

The plaintiff notes, however, that in the present case, instead of attaching her application for a prejudgment remedy to a complaint setting forth an action on the judgment, she could have attached it to a complaint setting forth the same causes of action set forth in her

Massachusetts action.[13] The plaintiff claims that rather than litigate in two forums, she chose the action on the judgment in order to conserve judicial resources and the costs to the respective parties. Essentially, the plaintiff contends that acceptance of the defendants' interpretation of the prejudgment remedy statutes will force plaintiffs to engage in duplicative litigation, and unnecessarily burden judicial resources. We disagree. Although we are sympathetic to the plaintiff's concern about duplicative litigation and burdens on judicial resources, we nevertheless are compelled by the language and structure of the prejudgment remedy statutes to conclude that an action brought to enforce a foreign judgment, prior to the foreign judgment having been obtained, cannot support an application for prejudgment remedy. *Feldmann* v. *Sebastian,* supra, 261 Conn. 726 ("prejudgment remedy statutes must be strictly construed").[14] Furthermore, there is nothing in the legislative history of the prejudgment remedy statutes that compels a contrary conclusion, or brings actions pending in a foreign jurisdiction clearly within the scope of the prejudgment remedy statutes. See *Vitanza* v.

[13] The claims asserted by the plaintiff in the Massachusetts action included breach of an exchange agreement, breach of fiduciary duty, fraud, accounting, unfair trade practices pursuant to Mass. Gen. Laws c. 93A, § 11, conversion, and trustee process and reach pursuant to Mass. Gen. Laws c. 246, § 1, and Mass. Gen. Laws c. 214, § 3 (6). *Cahaly* v. *Benistar Property Exchange Trust Co.,* supra, 73 Conn. App. 280.

[14] In addition, we note that the result advocated by the plaintiff is not entirely devoid of additional burdens for our court system. In situations in which the plaintiff attempts to obtain a prejudgment remedy based on a matter pending in a foreign jurisdiction, it is undoubtedly more difficult for the trial court in Connecticut to make the appropriate probable cause determination. For example, the trial judge will be unfamiliar with the law of the foreign jurisdiction, will not have control over any of the subsequent litigation, and will have to rely on the parties' representations about the status of the foreign action.

Furthermore, it was the plaintiff's choice to bring her underlying action in Massachusetts, rather than in Connecticut, for whatever strategic or other reasons she may have had. Therefore, by her own strategic choice she has multiplied the litigation involved between these parties.

*Upjohn Co.,* supra, 257 Conn. 381 ("the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope" [internal quotation marks omitted]).

The plaintiff claims that there is no language in the relevant prejudgment remedy statutes prohibiting the relief sought in her application. In support of her claim, she points to Judge Schaller's conclusion that "[t]he prejudgment remedy statutes do not contain any provision that prohibits the bringing of the Connecticut prejudgment remedy application on the basis of a prospective action to enforce the judgment prior to the obtaining of the foreign judgment." *Cahaly* v. *Benistar Property Exchange Trust Co.,* supra, 73 Conn. App. 286–87 (*Schaller, J.,* concurring). The plaintiff's claim is flawed, however, because the "operation of a statute in derogation of the common law is to be limited to matters *clearly brought within its scope.*" (Emphasis added; internal quotation marks omitted.) *Vitanza* v. *Upjohn Co.,* supra, 257 Conn. 381. The relevant inquiry, therefore, is what the prejudgment remedy statutes bring within their scope, not what they fail to prohibit. In the present case, the language found in the prejudgment remedy statutes does not clearly bring actions pending in another jurisdiction within their scope; rather, the statutes expressly link an application for a prejudgment remedy to the action set forth in the attached writ, summons and complaint.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the decision of the trial court, and to remand the case to that court with direction to deny the plaintiff's application for a prejudgment remedy against the defendants.

In this opinion the other justices concurred.