TRAVELERS CASUALTY AND SURETY COMPANY OF
AMERICA *v.* MICHAEL CARIDI ET AL.
(AC 34559)

Bear, Sheldon and Pellegrino, Js.

Argued April 10—officially released August 13, 2013

*Ralph J. Monaco*, with whom, on the brief, was *Jonathan T. Lane*, for the appellants (defendants).

*Jared Cohane*, with whom was *Timothy T. Corey*, for the appellee (plaintiff).

*Opinion*

PELLEGRINO, J. The defendants, Michael Caridi and Jill DeBiasi Caridi, appeal from the judgment of the trial court granting an application for a prejudgment remedy filed by the plaintiff, Travelers Casualty and

Surety Company of America. The defendants claim that the court improperly (1) prejudged the merits of the plaintiff's application before the defendants' presentation of their evidence, thereby effectively precluding them from presenting their case, (2) found that the plaintiff's action was timely after concluding that the statute of limitations began to run in 2009, rather than in 2005, and (3) concluded that it had jurisdiction over the plaintiff's action when a purportedly identical action between the parties also was pending in New York. We affirm the judgment of the trial court.

The following facts, as found by the court, and procedural history are relevant to our disposition of this appeal. Michael Caridi is the president of SRC Construction Corporation of Monroe, Inc. (SRC).[1] On or about April 24, 2002, SRC entered into a construction contract with the Atlantic City Housing Authority (housing authority) for the construction of a senior living center in Atlantic City, New Jersey. As a condition for entering into the contract, SRC was required to obtain a performance and payment bond from a surety company. In August, 2001, SRC arranged for the issuance of such a bond with the plaintiff, a surety company. The plaintiff and SRC entered into the performance and payment bond on June 14, 2002.

A general agreement of indemnity (agreement) dated August 22, 2001, was executed by the plaintiff to SRC. The agreement identified the plaintiff as the "Company" and identified the other parties to the agreement as "Indemnitor." There were three indemnitors under the agreement: the defendants, as individual indemnitors; and SRC, as corporate indemnitor. The agreement concerned certain bonds that "have heretofore been or may hereafter be required by, for, or on behalf of the

---

[1] SRC was not named as a defendant in the underlying action and is not a party to this appeal.

Indemnitor," and provided that "[a]s a prerequisite to the execution of such [b]onds, the Company requires complete indemnification."

Construction commenced on the senior living center project. On April 30, 2009, when the project was close to completion, the housing authority terminated its construction contract with SRC. By letter to the plaintiff dated May 7, 2009, the housing authority demanded "that in accordance with the requirements of the performance bond, [the plaintiff] take over and complete the project." The plaintiff thereafter arranged for the completion of the project, as required by the terms of the performance and payment bond.

On March 8, 2011, the plaintiff filed an application for prejudgment remedy seeking to secure the sum of $1,276,662. In the unsigned complaint attached to its application, the plaintiff alleged, inter alia, that it had paid $886,125 from its reserves to satisfy claims arising under the performance and payment bond, and that it might be required to pay an additional $390,537 for future claims arising under the bond. The plaintiff further asserted that the defendants had failed to satisfy their obligations under the agreement; the proposed complaint sought, inter alia, specific performance of the agreement and indemnification.

The defendants moved to dismiss the application on May 6, 2011, claiming that an identical action was pending in New York state court. The court denied the defendants' motion on July 22, 2011. Following briefing by the parties and a contested hearing, the court granted the application by issuing a prejudgment remedy in favor of the plaintiff in the amount of $1,272,630.95 and authorizing the attachment of certain real estate located in Greenwich, Connecticut. This appeal followed. Additional facts and procedural history will be set forth as necessary.

We begin by setting forth the standard of review and general legal principles relevant to this appeal. Our Supreme Court has recognized that appellate "review of the granting of a prejudgment remedy is very circumscribed. . . . In its determination of probable cause, the trial court is vested with broad discretion which is not to be overruled in the absence of clear error." (Citation omitted; internal quotation marks omitted.) *TES Franchising, LLC* v. *Feldman*, 286 Conn. 132, 137, 943 A.2d 406 (2008). "[T]he clear error standard in this context is a heightened standard of deference that exceeds the level of deference afforded under the abuse of discretion standard. Therefore, [an appellate] court will overrule the trial court's determination on a prejudgment remedy only if [it is] left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id., 138 n.6.

I

The defendants first claim that the court improperly predetermined the outcome of the prejudgment remedy application before the defendants had the opportunity to submit their evidence, effectively precluding them from presenting a defense. Specifically, the defendants assert that the court "made comments to the [d]efendants that showed the court had decided the merits of the case before the [defendants] presented any evidence or submitted any defense, other than cross examination," which purportedly violated the defendants' due process rights to a meaningful hearing prior to the attachment of their property. We are not persuaded.

The record reveals the following additional facts and procedural history relevant to the resolution of this claim. Commencing on November 9, 2011, the court conducted a contested hearing on the plaintiff's application for a prejudgment remedy; the hearing continued with the plaintiff's case-in-chief on November 10, 22,

and 29, 2011. At the conclusion of the plaintiff's case-in-chief, on November 29, 2011, the defendants moved to dismiss pursuant to Practice Book § 15-8 for failure to make out a prima facie case.[2] The court denied the defendants' motion in an oral ruling, concluding, inter alia, that Practice Book § 15-8 is inapplicable in the context of a prejudgment remedy proceeding because § 15-8 references the "trial of any issue of fact," and a prejudgment remedy hearing is not a trial.[3] The court further rejected the defendants' substantive arguments in favor of dismissal, referencing the evidence submitted by the plaintiff and determining that the plaintiff had satisfied the probable cause standard with respect to the elements of its prima facie case.

At the conclusion of its oral ruling, the court stated: "I did forty-five minutes [of an oral decision]. Mr. Monaco [the defendants' counsel] the handwriting's on the wall. Isn't it? Isn't the handwriting on the wall? You asked for [Practice Book §] 15-8, and I made some rulings that may very well affect the prejudgment remedy decision on the merits. You have a couple minutes to consider that with your client. And you'll have some time to talk about—Counsel, I'm not offended with a prejudgment remedy at less [than] $1,200,000. You can resolve that yourselves too. Okay?" The plaintiff's counsel indicated that he understood the court, and the defendants' counsel asked: "Is the Court asking me to refrain from presenting evidence, because it's decided

---

[2] Practice Book § 15-8 provides: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the extent as if the motion had not been made."

[3] We do not reach the question of the propriety of a Practice Book § 15-8 motion in the prejudgment remedy context, as that issue is not directly implicated by the defendants' claims on appeal.

the case?" The court responded: "No. You asked me to decide the issues on [§] 15-8. I did. I decided the issues. You heard me decide the issues. You heard me decide issues that relate to the essence of the case. . . . You asked me to do that. I didn't have to do that. But you asked me to do it. I did it. Okay? *So, you can present all the evidence you want to. I told you, you have ten days in this case. You have five days.* Somebody said a day, I said no, it's ten days. I'm ready to do ten days. I'll do ten days, but I'm just giving you fair warning. . . . You have the right to put on evidence. You lose the case, you have a right to appeal, and test it all on appeal. That's perfectly all right. *I'm not going to deprive you of anything. But I don't have a—I have an open mind. I don't have a closed mind.*" (Emphasis added.)

The defendants' counsel then stated that he did not "wish to waste anyone's time," and that "[i]f the Court has decided the case, you've decided the case." The court responded: "No. I have decided the case, based upon what prima facie probable cause is. . . . I denied your motion because it's not applicable to prejudgment remedy. . . . But I went ahead . . . to go through each of the factual issues that you had raised, and I decided each of those, on a probable cause standard. You heard that. That's the issue that I have to decide after I hear all the evidence. And you have the burden to prove it by preponderance of the evidence, not by probable cause standards. . . . You have the lunch break to talk to your client and decide what you wish to do. . . . At two o'clock I'd come back on the bench. You want to call your first witness, or whatever happens to be done. . . . *But I have not decided this case. I have an open mind. You just saw my open mind. You asked me to decide the [§] 15-8. . . . And I rendered a decision on probable cause standards, based upon*

*the plaintiff's case. Your evidence may show me otherwise. I have an open mind. . . . So it's up to your client to figure out whether I can change my mind. You can make that decision. Okay?"* (Emphasis added.) Upon return from the lunch break, the defendants' counsel informed the court that "based on the Court's rulings on the [§] 15-8 motion, and comments immediately preceding our lunch break, [the defendants] will not be offering any evidence . . . other than what's already been offered . . . during the plaintiff's presentation of its case." The court responded, "Okay."

On the basis of our review of the record, we cannot conclude that the court deprived the defendants of the opportunity to present their evidence in opposition to the plaintiff's application for a prejudgment remedy. The hearing transcript makes clear that the court addressed the merits of the plaintiff's application as part of its resolution of the defendants' motion to dismiss and then suggested to the parties that after hearing the court's initial thoughts on the merits, the parties should communicate with each other and attempt to resolve the issue without the need for further judicial intervention. The court explicitly informed the defendants' counsel that it had not reached a final decision on the plaintiff's application, and invited the defendants to present whatever evidence they desired in the hopes of changing the court's initial impressions of the case formed under the motion to dismiss standard. Yet, the defendants declined this invitation. Having chosen not to present their case, the defendants cannot now be heard to claim that the court denied them the opportunity to do so. Accordingly, we reject the defendants' first claim on appeal.[4]

---

[4] *Soltesz* v. *Miller*, 56 Conn. App. 114, 741 A.2d 335 (1999), cited by the defendants in support of their argument that the trial court denied them their right to a meaningful hearing, is inapposite. In *Soltesz*, the court denied the plaintiff's motion for a prejudgment attachment without affording the parties any opportunity for an evidentiary hearing. Id., 116–17 and n.5 (transcript showed only "a dialogue between the trial court and each counsel,"

## II

Next, the defendants assert that the court erred in concluding that the plaintiff's action was not barred by the statute of limitations. Specifically, the defendants contend that the plaintiff's underlying claim accrued in November, 2005, and that the plaintiff had not yet served its complaint by the time the statute of limitations expired in November, 2011.[5] According to the defendants, the court improperly rejected this argument and concluded that the statute of limitations began to run in 2009. We are not persuaded.

"The question of whether a party's claim is barred by the statute of limitations is a question of law, which this court reviews de novo. . . . The factual findings that underpin that question of law, however, will not be disturbed unless shown to be clearly erroneous." (Citation omitted; internal quotation marks omitted.) *Jarvis* v. *Lieder*, 117 Conn. App. 129, 146, 978 A.2d 106 (2009). Because the defendants are challenging the court's factual finding that the operative date for calculating the statute of limitations occurred in 2009, the clearly erroneous standard of review applies. "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the

where parties presented no stipulations, affidavits or testimony and "[n]either counsel appear[ed] to have considered that appearance before the trial court as an 'evidentiary hearing' "). By contrast, in the present case, the court had conducted numerous days of contested evidentiary hearing on the plaintiff's application at the time it decided the defendants' motion to dismiss, and after denying the motion, the court indicated that it would allow the defendants an additional five days to present evidence related to their defenses if they so chose.

[5] The defendants assert that the plaintiff's underlying causes of action are subject to the six year statute of limitations for breach of contract. For purposes of this appeal, we assume without deciding that a six year statute of limitations; see General Statutes § 52-576; applies to the claims asserted in the plaintiff's complaint.

entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id., 143.

The record reveals the following additional facts relevant to our resolution of this claim. Paragraph 1 of the agreement defines what constitutes a "default" under the agreement, providing in relevant part: "Any of the following shall constitute a [d]efault: A declaration of [c]ontract default by the obligee or entity for whom a [c]ontract is performed; actual breach or abandonment of any [c]ontract; a breach of any provision of [the agreement]. . . ."[6]

On April 30, 2009, the housing authority adopted a resolution finding that SRC had defaulted under its contractual obligations to the housing authority and terminating its contract with SRC. By letter dated May 7, 2009, counsel for the housing authority demanded that the plaintiff take over and complete the project "in accordance with the requirements of the performance bond." The court treated this May, 2009 letter as the operative event triggering the statute of limitations and found the plaintiff's application to be timely.

In concluding that the plaintiff's underlying cause of action accrued in 2009, the court rejected the defendants' argument that the statute of limitations actually began to run in 2005, when the plaintiff incurred $884 in attorney's fees upon hiring an attorney to examine the terms of the contract between SRC and the housing authority.[7] The only evidence before the court concerning the defendants' contention were a voucher and copy

[6] Both parties appear to agree that the statute of limitations would begin to run upon a default of the agreement; they disagree as to what constituted the operative default here.

[7] Paragraph 3 of the agreement provides in relevant part that the indemnitors "shall exonerate, indemnify and save the [plaintiff] harmless from and against every claim, loss, damage, demand, liability, cost, charge, suit, judgment, attorney's fee, and expense which the [plaintiff] occurs in consequence of having executed, or procured the execution of the [bond]." Relying on *Balboa Insurance Co.* v. *Zaleski*, 12 Conn. App. 529, 532 A.2d 973, cert.

of a check reflecting an $884 payment to counsel on November 9, 2005, and testimony from one of the plaintiff's witnesses that the plaintiff had received a letter from the housing authority in 2005, expressing concern over SRC's delay in completing the construction project and stating that it had engaged an attorney to attend a meeting between the plaintiff and SRC to understand the nature of the delay. In rejecting the defendants' argument and concluding that May, 2009, was the operative date, the court found that "[t]here was no evidence of any breach of contract, declaration of breach of contract or termination of the SRC contract on or about November 2005," and that the "underlying facts involved in the attorney rendering those $884 worth of legal services in 2005 were not fully explored before this court."

After our review of the record, we conclude that there was evidence before the court supporting its finding that the statute of limitations began to run in May, 2009, when the housing authority first demanded that the plaintiff take over completion of the construction project following the declaration of SRC's default and the termination of the contract between SRC and the housing authority. The court's finding was not clearly erroneous, and, accordingly, we reject the defendants' second claim on appeal.

denied, 206 Conn. 802, 535 A.2d 1315 (1987), the defendants appear to argue that the attorney's fees incurred in 2005 constituted a breach of paragraph 3 of the agreement triggering a "default" under paragraph 1—and that the plaintiff's "liability to pay any fees manifests execution of the bond and acceptance that [the defendants] must have been in default of the [agreement] in 2005." The plaintiff, however, presented testimony that the bill for attorney's fees was not submitted to SRC for payment in 2005, and furthermore, that because SRC and the housing authority came to an agreement to continue the project in 2005, the plaintiff "[did not] investigate whether or not SRC was in [breach of contract] in 2005." Given this testimony, and the lack of any other evidence in the record to support the defendants' position, it was not clearly erroneous for the trial court to conclude that "[t]here was no evidence of any breach of contract, declaration of breach of contract or termination of the SRC contract" in November, 2005.

## III

Finally, the defendants contend that an identical action is pending in New York,[8] and that, in view of that action, the court improperly failed to dismiss the plaintiff's application for lack of subject matter jurisdiction.[9] We do not agree.

The record reveals the following additional relevant facts and procedural history. Together with its application for a prejudgment remedy, the plaintiff submitted, inter alia, an unsigned complaint to be filed in Connecticut Superior Court. The complaint asserted causes of action including specific enforcement of the agreement, indemnification, and exoneration. On May 6, 2011, the defendants moved to dismiss the plaintiff's application for lack of subject matter jurisdiction, claiming that in 2010, the plaintiff had filed an action in New York state court against the same parties and alleging the same causes of action as those set forth in the proposed complaint. The defendants asserted that because the application was based upon the plaintiff's anticipation of a judgment in their favor in the New York litigation, it was not an "action" upon which a prejudgment remedy

[8] As a factual matter, the defendants' repeated assertion that the action in New York involves "identical parties" appears to be inaccurate. Indeed, the record reveals that SRC was named as a defendant in the New York action but was not named as a defendant in the unsigned complaint attached to the application for prejudgment remedy.

[9] Although the defendants initially framed this issue as a challenge arising under the prior pending action doctrine, it is well settled that "the pendency of a prior action between the same parties and to the same ends is grounds for dismissal only where the actions are pending in the same jurisdiction. The pendency of an action in one state is not a ground for abatement of a later action in another state." *Sauter* v. *Sauter*, 4 Conn. App. 581, 584, 495 A.2d 1116 (1985). It should also be noted that the prior pending action doctrine does not implicate the subject matter jurisdiction of the court. See *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 403, 973 A.2d 1229 (2009). Here, in fact, the defendants' motion to dismiss raised a question of the court's subject matter jurisdiction because the plaintiff's action allegedly did not satisfy the statutory requirements of § 52-278c.

could be obtained pursuant to General Statutes § 52-278c.[10] The trial court denied the defendants' motion to dismiss, finding that "the complaint and affidavit attached to the application state that the prejudgment remedy is being sought for a contemplated domestic action on the indemnity agreement, not to enforce a judgment." We agree with the conclusion of the trial court.

The defendants argue that *Cahaly* v. *Benistar Property Exchange Trust Co.*, 268 Conn. 264, 842 A.2d 1113 (2004), should govern our analysis of this claim, but their reliance on *Cahaly* is misplaced. In *Cahaly*, several plaintiffs filed an action in Massachusetts Superior Court on January 21, 2001, seeking approximately $9 million in damages resulting from the defendants' failure to return funds to them. See id., 267. On January 30, 2001, one of the plaintiffs in the Massachusetts action filed an application for a prejudgment remedy in the Superior Court in the judicial district of Hartford, seeking an attachment of $1.1 million against the defendants. Id., 268. That plaintiff admitted that she had no intention to litigate her underlying claim against the defendants in Connecticut; rather, the single count in her complaint asserted that she was "likely to obtain a judgment against [the defendants] in the amount of

---

[10] General Statutes § 52-278c (a) provides in relevant part that to obtain a prejudgment remedy, a plaintiff must file with the court a "proposed unsigned writ, summons and complaint," attached to the plaintiff's "application, directed to the Superior Court to which the action is made returnable, for the prejudgment remedy requested." In *Cahaly* v. *Benistar Property Exchange Trust Co.*, 268 Conn. 264, 842 A.2d 1113 (2004), our Supreme Court stated that "the 'action' referred to in § 52-278c (a) (1) must be an action that the plaintiff is about to bring in Connecticut upon which a Connecticut court will render judgment. It does not include a future judgment on an action that the plaintiff has filed or proposes to file in another state." Id., 274. As discussed in further detail herein, the unsigned complaint attached to the plaintiff's application in the present case is a contemplated domestic action, and, therefore, it falls within the scope of § 52-278c.

$992,230 plus accruing interest and costs" in the Massachusetts action. (Internal quotation marks omitted.) Id., 277. Characterizing the plaintiff's Connecticut complaint as a "prospective action in Connecticut that will be brought to enforce a foreign judgment, prior to the foreign judgment's having been obtained," our Supreme Court held that the plaintiff's complaint did not satisfy § 52-278c because it was not "an action that the plaintiff [was] about to bring in Connecticut upon which a Connecticut court [would] render judgment." (Internal quotation marks omitted.) Id., 274 and n.9. The court concluded that Connecticut's "prejudgment remedy statutes do not provide authority for the issuance of a prejudgment remedy to secure an action brought to enforce a potential foreign judgment." Id., 278.

In *General Electric Capital Corp. of Puerto Rico* v. *Rizvi*, 113 Conn. App. 673, 971 A.2d 41 (2009)—upon which the trial court relied in denying the defendants' motion to dismiss—this court recognized that the rule articulated in *Cahaly* does not apply where a prejudgment remedy is sought in Connecticut on a contemplated domestic action. In *Rizvi*, the plaintiff filed an action against the defendants in the Puerto Rico Court of First Instance on March 7, 2007, seeking damages for an alleged breach of lease agreement and enforcement of a personal guarantee. Id., 675–76. On June 8, 2007, the plaintiff filed an application for a prejudgment remedy in the Superior Court in the judicial district of Stamford-Norwalk, seeking an attachment of approximately $1.1 million. Id., 676. The defendants filed a motion to dismiss based on *Cahaly*, asserting that the prejudgment attachment was improper because the complaint attached to the plaintiff's application "was not an independent action contemplated in Connecticut but, rather, an action in support of a foreign judgment yet to be obtained." Id. The trial court denied the defendants' motion and ultimately ordered an attachment

of the defendants' real estate. Id., 676–77. This court affirmed the judgment of the trial court, distinguishing *Cahaly* and noting that "the complaint [attached to the plaintiff's application for prejudgment remedy] plainly states that the prejudgment remedy was sought for a contemplated domestic action on the guarantee." Id., 680.

Here, as in *Rizvi*, the unsigned complaint attached to the plaintiff's application for a prejudgment remedy reflects a contemplated action in our Superior Court seeking, inter alia, specific performance of the agreement, indemnification, and exoneration. The plaintiff was not seeking merely to enforce a judgment yet to be rendered in the New York action—indeed, the complaint is utterly silent about any action in New York or any anticipated judgment therein. Because the plaintiff here sought a prejudgment remedy on a contemplated domestic action to enforce the agreement, *Cahaly* has no bearing on the present matter, and the trial court properly denied the defendants' motion to dismiss. See id.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] The defendants attempt to distinguish *Rizvi* by asserting that the Connecticut and Puerto Rico actions at issue in that case alleged different, "independent," causes of action, whereas the New York and Connecticut actions at issue here are purportedly "identical." Our decision in *Rizvi* included no such requirement that the contemplated domestic action underlying a prejudgment remedy application be unique from any pending foreign actions. The defendants' argument on this point is further belied by long-standing precedent establishing that the prior pending action doctrine is inapplicable where actions—even identical actions—are pending in different jurisdictions. See, e.g., *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 397–98, 973 A.2d 1229 (2009) (trial court must dismiss second action under prior pending action doctrine only where two actions are "exactly alike, i.e., for the same matter, cause and thing, or seeking the same remedy, *and in the same jurisdiction*" [emphasis altered]).