CORDOBA SHIPPING CO., LTD., Plaintiff,

v.

MARO SHIPPING LTD., and International Traders Inc., Defendants.

Civ. A. No. B 79–506.

United States District Court, D. Connecticut.

July 16, 1980.

Ralph C. Kreimer, Cos Cob, Conn., and David Nourse, Kirlin, Campbell & Keating, New York City, for plaintiff.

Stephen M. Seelig, Glazer, Wechsler, Seelig & Glazer, Stamford, Conn., for all defendants.

## RULING ON DEFENDANTS' MOTION TO DISSOLVE ATTACHMENT

EGINTON, District Judge.

Plaintiff, Cordoba Shipping Company (Cordoba), commenced this action in admiralty by filing a verified complaint and a request for an order of attachment against defendants Maro Shipping Ltd. (Maro) and

International Traders Inc. (International). Jurisdiction is predicated upon 28 U.S.C. § 1333.

Plaintiff, a Panamanian corporation, alleged that it contracted with Maro, a Liberian corporation, for a time charter of the M.V. Albaforth at a rate of $8,500 per day payable semi-monthly in advance. In addition, the charter party contained the following arbitration clause:

17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.

In a separate document, International, a Connecticut corporation, executed a guaranty of Maro's performance. The guaranty provided, in its entirety:

We guarantee the performance of Maro Shipping Ltd. under the above-mentioned Charter Party.

At the conclusion of the time charter, Cordoba instituted this action against Maro and International for the alleged default in payments under the charter and the guaranty amounting to $320,177.50. Plaintiff filed a concurrent motion for an order of attachment under Fed.R.Civ.P. 4(e), 64 and/or Supp.R. B, pursuant to C.G.S. § 52–278e, supported by the affidavits of Ferdinand E. Sauer and Ralph C. Kreimer. This court issued the requested order of attachment, pursuant to which International's deposits amounting to $9,845 in collected funds in the office of the Hartford National Bank, Stamford, Connecticut, were at-tached. Maro had no funds on deposit at the time of the attachment.

Defendants thereafter moved this court for an order compelling arbitration, a stay pending arbitration, and an order dissolving the attachment. Plaintiff consented to the arbitration of its claim against Maro. This Court thereupon stayed this action pending the outcome of the arbitration, and now rules on the motion to dissolve the attachment.

For the reasons stated below, the motion to dissolve the attachment is denied as to each defendant.

### I

The Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims (Supp.R.) specifically sanction the use of state attachment proceedings in federal maritime actions. See Fed.R.Civ.P. 4(e), 64 and Supp.R. B. Defendants argue, however, that attachment in an admiralty action is proper only if effected under Supp.R. B,[1] which authorizes "maritime attachments" only when used to acquire personal jurisdiction over a defendant. Thus, they contend, attachment of these defendants' assets was improper because both Maro and International are subject to the personal jurisdiction of this Court.

It is clear, as defendants assert, that neither Fed.R.Civ.P. 4(e) nor Supp.R. B(1) authorizes the use of attachment solely as a device to secure a potential judgment. The procedure under these rules can furnish security, but only if it is incidental to an attempt to acquire *quasi in rem* jurisdiction. See *Chilean Line Inc. v. United States*, 344 F.2d 757 (2d Cir. 1965); *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580 (2d Cir. 1963). This Court, however, has *in*

---

1. Rule B. *Attachment and Garnishment: Special Provisions.*

   (1) *When Available; Complaint, Affidavit, and Process.*
   With respect to any admiralty or maritime claim in personam a verified complaint may contain a prayer for process to attach the defendant's goods and chattels, or credits and effects in the hands of garnishees named in the complaint to the amount sued for, if the defendant shall not be found within the district. . . . In addition, or in the alternative, the plaintiff may, pursuant to Rule 4(e), invoke the remedies provided by state law for attachment and garnishment or similar seizure of the defendant's property. . . .

*personam* jurisdiction over both Maro and International since Maro's principal place of business is in Connecticut and International is a Connecticut corporation. Attachment to acquire jurisdiction is unnecessary.

■ The presence of personal jurisdiction in this case does not, however, necessarily defeat the attachment pursuant to C.G.S. § 52–278e, since plaintiff additionally sought attachment under Fed.R.Civ.P. 64, which expressly permits a court to order

all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action . . under the circumstances and in the manner provided by the law of the state in which the district court is held, . . . .

Defendants argue that plaintiff's right to pursue an attachment is limited by Supp.R. B because plaintiff is bringing an admiralty action. Defendants' position ignores the intention of Congress, in the 1966 merger of admiralty and civil procedure, that parties in admiralty actions have available to them all procedural alternatives available to parties in other civil actions, unless specifically denied in admiralty by the terms of a specific rule. *See, e. g.,* Fed.R.Civ.P. 38. The Supplemental Rules were intended not to limit the options of admiralty parties but to preserve the most important of the unique admiralty procedures which had no equivalent in the civil procedure. 12 Wright & Miller § 3201. Thus, Supp.R. B preserves the traditional right of the maritime plaintiff to bring the action *quasi in rem,* if the plaintiff so elects. Though admiralty plaintiffs have traditionally been able to acquire personal jurisdiction over a defendant merely by attaching the defendant's property in the jurisdiction, plaintiffs on the civil side of federal courts did not have this right

to gain personal jurisdiction by attachment until Fed.R.Civ.P. 4(e) was added to the Rules in 1963. *See* Advisory Committee Notes of 1966 to Supp.R. A, *reprinted in* 7A Moore's Federal Practice ¶ A.01[2].

Significantly, the express language of Supp.R. A clearly applies the Supplemental Rules to admiralty and maritime claims only when one of four specific historical maritime remedies is sought.[2] Of the four enumerated remedies, only the first concerns an attachment or garnishment, the relief sought herein, and that remedy is limited to a *maritime* attachment or garnishment. The plaintiff in this instance in its complaint expressly sought "maritime attachment pursuant to Supplemental Rule B" *plus* the "remedies of attachment or garnishment provided by C.G.S.A. § 52–278 *et seq.* [sic]".

This Court finds that Fed.R.Civ.P. 64 applies to this action and permits the plaintiff to utilize the state prejudgment remedies available to secure an ultimate judgment, without showing the need for a jurisdictional attachment. Of course, use of such state remedies requires conformance to the state statute or statutes involved, and it is to that issue that the Court now directs its attention.

## II

■ The Connecticut prejudgment remedy statute, C.G.S.A. § 52–278a *et seq.,* provides that a plaintiff suing for a money judgment may attach a defendant's real or personal property during the course of the litigation, if the plaintiff follows the statutory procedures designed to protect the defendant. The general purpose of such an attachment is to secure the appearance of the defendant and to furnish security for any judgment plaintiff may receive. *See*

---

**2.** Rule A. *Scope of Rules.*

These Supplemental Rules apply to the procedure in admiralty and maritime claims within the meaning of Rule 9(h) with respect to the following remedies:

(1) Maritime attachment and garnishment;
(2) Actions in rem;
(3) Possessory, petitory, and partition actions;

(4) Actions for exoneration from or limitation of liability.

\* \* \* \* \* \*

The general Rules of Civil Procedure for the United States District Courts are also applicable to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules.

*Black Watch Farms, Inc. v. Dick*, 323 F.Supp. 100 (D.Conn.1971); *Atlas Garage & Custom Builders, Inc. v. Hurley*, 167 Conn. 248, 355 A.2d 286 (1974).

Defendants attack the *ex parte* nature of the attachment in this case. They argue that plaintiff failed to follow the procedures of C.G.S. §§ 52–278c and 52–278d which require a probable cause hearing on the validity of the claim before attachment. Thus, they conclude, the court must dissolve the order of attachment and garnishment.

■ The attachment in this case was procedurally proper. § 52–278e permits an attachment without prior hearing as ordinarily required by §§ 52–278c and 52–278d where the plaintiff files an affidavit asserting "there is probable cause to sustain the validity of plaintiff's claim" and that the defendant "has stated he is insolvent or has stated he is unable to pay his debts as they mature." The affidavit of Ferdinand E. Sauer, filed with the application for the writ of attachment, details the defendants' inability to pay their debts:

> In my various conversations with Mr. Herman [president of both defendants] he stated that his companies were having a cash flow problem and therefore could not meet their obligations as they fell due.

The affidavit of Ralph Kreimer, attorney for plaintiff, reports that defendants agreed to pay sums under the contract, that they defaulted in payment and that they have failed to pay the agreed sums despite plaintiff's demands. These assertions were sufficient to support the affiant's belief that there was probable cause to sustain the validity of plaintiff's claim.

### III

The prejudgment statute further provides that a defendant subjected to an *ex parte* attachment may later move for dissolution or modification of the prejudgment remedy. Upon such a motion, it is the court's responsibility to determine whether "there is probable cause to sustain the validity of the plaintiff's claim." C.G.S.A. § 52–278e.

■ In assessing the probable cause for an *ex parte* attachment, the examining court need not determine whether plaintiff is likely to recover the entirety of its claims, but only whether plaintiff is likely to prevail. Indeed, the concern is merely "whether and to what extent the plaintiff is entitled to have property of the defendant held in the custody of the law pending adjudication of the merits of that action." *E. J. Hansen Elevator, Inc. v. Stoll*, 167 Conn. 623, 629–30, 356 A.2d 893, 896 (1975).

■ The probable cause necessary to sustain a prejudgment remedy has been defined as the good faith belief in the existence of facts essential for the action which would convince the hypothetical "reasonable person" of the merits of the action. *Ledgebrook Condominium Assn., Inc. v. Lusk Corp.*, 172 Conn. 577, 584, 376 A.2d 60 (1977). The *Ledgebrook* court held that the uncontradicted statement of an affiant that he believes that recovery of a stated sum is probable, together with a finding of facts which reasonably support the affiant's belief, will ordinarily justify a holding of probable cause. *Id.* at 586, 376 A.2d 60. Plaintiff's affidavit clearly states that defendants are indebted to plaintiff in the amount of $320,177.50 on the Charter Party. This amount is the sum of the contract *per diem* charge, allegedly still unpaid, and the estimated cost of new bunkers. The anticipated recovery is therefore founded on reasonable subordinate facts.

At the hearing, defendants did not controvert the non-payment of the amounts past due under the Charter Party. Maro did indicate, however, that it had raised an $125,000 damage claim against Cordoba for the failure of the Albaforth to carry the tonnage specified in the time charter. It is this claim which led to submission of the controversy to arbitration.

Under these facts, the Court finds probable cause to believe that plaintiff will prevail on the merits in this case. Even if the arbitrators award Maro the entire sum of its alleged damages, Cordoba will recover a substantial part of the amount demanded.

Moreover, Cordoba's likely recovery is far in excess of the $9,845 under attachment.

## IV

Defendants' final attack on the attachment turns on the alleged inconsistency between the Arbitration Act, 9 U.S.C. § 1 *et seq.*, and this court's entry of state prejudgment remedies against the defendants. In short, defendants argue that the submission of this controversy to arbitration under 9 U.S.C. § 2 divests this court of any authority to order prejudgment remedies pursuant to the state statute because this action is now governed in its entirety by the provisions of the Arbitration Act.

## A

■■■ Though both defendants raise this argument, it is clear that, regardless of its merit, the pendency of arbitration will not serve to dissolve the attachment of International's property. Plaintiff's action lies against both Maro as charterer and International as guarantor. Only parties to the charter agreement, however, are subject to the arbitration clause. Case law has held that where, as here, an arbitration clause is limited to disputes between "owners and charterers," it is binding only on the two named parties. *Production Steel Co. of Ill. v. SS Francois L.D.*, 294 F.Supp. 200 (S.D.N.Y.1968). *See also Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966 (2d Cir. 1975). A guarantor of a charter agreement will not be bound by an arbitration clause in the main agreement, *Interocean Shipping Co. v. National Shipping and Trading Corp.*, 523 F.2d 527 (2d Cir. 1975) *cert. denied* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976), especially where the guarantor's performance contract and the charter agreement are silent as to how disputes concerning the guarantor's liability are to be resolved. *Taiwan Navigation Co. v. Seven Seas Merchants Corp.*, 172 F.Supp. 721 (S.D.N.Y.1959). International's responsibilities are, therefore, not subject to arbitration; the attachment of International's property will not in any way interfere with the arbitration.

## B

■■■ The court's alleged lack of power to order a prejudgment remedy on a claim in arbitration is more seriously raised by defendant Maro. Nevertheless, the Second Circuit ruled some years ago that a court has the power to order prejudgment attachment, even though court action has been stayed to submit the underlying controversy to arbitration. *Murray Oil Products Co. v. Mitsui and Co.*, 146 F.2d 381 (2d Cir. 1944).

Even applying a more modern view of the role of arbitration, this Court finds no inconsistency between the goal of the Arbitration Act in achieving non-judicial resolution of controversies and that of C.G.S.A. § 52–278a *et seq.* in assuring the existence of monies to satisfy a judgment if and when it is obtained. This court will not dissolve the attachment.

Defendant's reliance on *Metropolitan World Tanker, Corp. v. P.N. Pertambangan Minjakdangas Bumi Nasional*, 427 F.Supp. 2 (S.D.N.Y.1975) is misplaced. Despite the plaintiff's attempt in that case to bring the controversy within the provisions of the Arbitration Act, Judge Motley correctly held that the court could compel arbitration only under 9 U.S.C. § 201, the Convention on Recognition and Enforcement of Foreign Arbitral Awards. Prejudgment attachment in such a case is inappropriate since arbitration under the Convention (rather than the Act) divests the court of jurisdiction. *McCreary Tire & Rubber Co. v. CEAT*, 501 F.2d 1032 (3d Cir. 1974).

In this case, the right to arbitration falls squarely within the provision of the Arbitration Act, 9 U.S.C. § 2, and was not compelled by the court. These proceedings have merely been stayed pending the conclusion of the arbitration. The stay did not divest this court of jurisdiction over the controversy between Cordoba and Maro; and this court finds no inconsistency between the policies underlying the Arbitration Act and those supporting C.G.S.A. § 52–278a *et seq.*

Accordingly, the Motion to Dissolve the Attachment is denied in all respects.

It is so ORDERED.