**EVERSPEED ENTERPRISES LTD., Plaintiff,**

v.

**SKAARUP SHIPPING INT'L., et al., Defendants.**

**Civil Action No. 3:09CV1878(SRU).**

United States District Court, D. Connecticut.

April 28, 2010.

Darin L. Callahan, Owens, Schine & Nicola, Trumbull, CT, Kevin J. Lennon, Patrick F. Lennon, Lennon Murphy & Lennon, Southport, CT, Michael J. Mitchell, Michael J. Mitchell, P.C., New York, NY, for Plaintiff.

Daniel L. Brown, Lisa M. Lewis, Mark E. McGrath, Robert S. Friedman, Sheppard Mullin Richter & Hampton, Rahul Wanchoo, Wanchoo Law Offices, LLP, New York, NY, John E. Meerbergen, Bleakley, Platt & Schmidt, Greenwich, CT, Claurisse Campanale–Orozco, Thomas L. Tisdale, Tisdale Law Offices LLC, Southport, CT, for Defendants.

### *RULING AND ORDER ON MOTION FOR PREJUDGMENT REMEDY AND FOR PENDENTE LITE RELIEF*

STEFAN R. UNDERHILL, District Judge.

Everspeed Enterprises ("Everspeed"), the disponent owner of the marine vessel, *Bunga Saga 9*, contends that Skaarup Fortune Shipping ("SFS") breached its obligation under the charter party[1] to charter the vessel from approximately July 21,

---

1. A charter party is a contract for the rental or lease of a marine vessel for a specified period of time.

2008 to at least December 15, 2010 at a rate of $56,500 per day. Having had limited success securing an attachment order from other courts, Everspeed presses this action under the court's admiralty and maritime law jurisdiction pursuant to Rule 9(h) of the Federal Rules of Civil Procedure and Sections 1331 and 1333 of Title 28 of the United States Code.[2] Everspeed has filed a three-count amended complaint (doc. # 46) and seeks, *inter alia*, a prejudgment remedy pursuant to Conn. Gen. Stat. § 52–278 (doc. # 4)[3] against defendants SFS, Skaarup Shipping Int'l ("SSI"), Skaarup Shipping Corp. ("SSC"), Thomas Bene, Ole Skaarup and Jonathan Zhu in the amount of $26,402,936[4].

Everspeed and SFS entered into a charter party agreement for the lease of the vessel, *Bunga Saga 9*. A dispute has arisen concerning the alleged breach of the charter party and Everspeed and SFS are engaged in arbitration proceedings in Singapore to resolve the dispute. Everspeed also maintains that SSI entered into a binding performance guarantee securing SFS's performance on the charter party.

In light of SFS's alleged breach, Everspeed has initiated proceedings in the Singapore High Court, the forum selected by the terms of the purported guarantee. SSI disputes the existence of the guarantee. Everspeed has also commenced an action in this court on the above noted alleged breaches and for a claim of alter ego. Everspeed has filed a motion for disclosure and an application for a prejudgment remedy in an effort to attach assets and secure a judgment should it succeed in any of the three proceedings. Everspeed has also filed a motion for *pendente lite* relief against SFS.

An evidentiary hearing was held on March 30, 2010.[5] The following are my findings of fact and conclusions of law in connection with the application for prejudgment remedy (doc. # 4), motion for disclosure (doc. # 5) and motion for *pendente lite* relief (doc. # 96).

## I. Background

### A. *The Parties*

Everspeed is a private corporation organized under the laws of the British Virgin

---

**2.** On July 21, 2009, Everspeed commenced a Rule B action in the Southern District of New York and secured an attachment of approximately $900,000 with respect to SFS. The attachment has been vacated in light of *Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte. Ltd.*, 585 F.3d 58 (2d Cir.2009). On January 4, 2010, Everspeed also commenced an action in the New York Supreme Court seeking an attachment against SFS. On January 25, 2010 the motion was denied.

**3.** Everspeed has also filed a motion for disclosure (doc. # 5).

**4.** In the amended complaint, Everspeed initially sought relief in the amount of $49,690,801 from each of the named defendants. On April 9, 2010, plaintiff filed an application for an order *pendente lite* (doc. # 96). In the motion the plaintiff has calculated its claim against Skaarup Fortune to be $26,402,936. Skaarup Fortune's counter-

claim against Everspeed is $4,174,256. Accordingly, Everspeed seeks an order securing the sum of $22,228,680. *Id.* at ¶ 5. A reduction in the amount sought from the remaining defendants is not obvious from the motion. Absent any evidence that any one defendant would be liable to Everspeed for contract damages in excess of SFS's liability, Everspeed could only recover $26,402,936 from any one defendant.

**5.** At the close of the hearing I reserved decision pending the testimony of defendant Thomas Bene. On April 5, 2010 the parties rested on all issues with the limited exception to the claim of alter ego as pled in the complaint. Accordingly, at this time I rule only on the plaintiff's motions for prejudgment remedy and disclosure (docs. ## 4 and 5), and plaintiff's motion for *pendente lite* relief (doc. # 96).

Islands. Its principal place of business is Singapore. SSI is a corporation organized under the laws of Vanuatu with its principal place of business in Connecticut. Defendant SFS is a Hong Kong corporation with its principal place of business in Shanghai, China. *Id.* at 6. Defendant SSC is a Delaware corporation with its principal place of business in Connecticut. Defendant Thomas Bene is the President of SSC, one-third shareholder and Director of SFS. Bene is a resident of Connecticut. Defendant Ole Skaarup is the chairman of SSC. Skaarup is a resident of Connecticut. Defendant Jonathan Zhu was the Vice–President of Skaarup Shipping and an officer of SFS and he is a resident of China.[6] Non-party Skaarup Shipbrokers, Inc. is a Delaware corporation with its principal place of business in Connecticut.

### B. *Procedural Background*

In the short lifetime of this matter, the parties have engaged in extensive motion practice that began on November 19, 2009 when Everspeed filed an eight-count complaint (doc. # 1), a motion for prejudgment remedy (doc. # 4), and a motion for disclosure (doc. # 5). The Skaarup Shipping defendants initially filed a motion to dismiss the complaint (doc. # 14) on December 14, 2009, a motion for sanctions (doc. # 27) on January 26, 2010, and a motion to dismiss the application for prejudgment remedy and disclosure (doc. # 41) on February 12, 2010. An amended complaint was filed on February 19, 2010 (doc. # 46), mooting doc. # 14. The Skaarup Shipping defendants filed a motion to dismiss the amended complaint (doc. # 65) and a motion to stay (doc. # 66) on March 5, 2010. SFS also filed a motion to dismiss the amended complaint (doc. # 71), a motion to dismiss the application for prejudgment

remedy (doc. # 73), and a motion to stay (doc. # 76) on March 12, 2010.

On March 30, 2010, after an evidentiary hearing and argument of all pending motions concerning the prejudgment remedy application, I reserved decision pending the testimony of Bene. On April 1, 2010, plaintiff filed a motion for leave to commence discovery (doc. # 86). On April 5, 2010 the Skaarup Shipping defendants filed a motion in opposition to the discovery motion and a cross-motion for an order denying the plaintiff's prejudgment remedy application (doc. # 87). At that time, the parties agreed to suspend the evidentiary hearing and rest on all issues, with the limited exception of the claim of alter ego as pled in the amended complaint. The parties reserved the right to provide the court with additional evidence in support of the motion for prejudgment remedy. The Skaarup Shipping defendants later filed an unopposed expert opinion declaration from Richard Lord, Q.C. with respect to English law. Everspeed filed an unopposed expert opinion on March 27, 2010 (doc. # 83–2, Ex. N).

On April 9, 2010, plaintiff filed a motion for *pendente lite* relief pursuant to Conn. Gen.Stat. § 52–422 and a memorandum in opposition to doc. # 87. On April 19, 2010, plaintiff filed a motion for a temporary restraining order with respect to the sale of the vessel, *Moon Sea.* Based on defendants' representation that the vessel would not be sold before April 26, 2010, I denied the motion (doc. # 100) as moot. Similarly, on April 21, 2010, plaintiff filed a motion for a temporary restraining order concerning funds subject to a "turnover" order in the Rule B proceeding in the Southern District of New York (doc.

---

**6.** Counsel for Skaarup Fortune have an appearance on record in the matter as counsel for Zhu. During the March 30th hearing, Skaarup Fortune's counsel represented that Zhu is no longer an employee or officer of Skaarup Fortune. The appearance has not yet been withdrawn.

# 103). Again, based on SFS's representation that the funds would be held in escrow by counsel pending a decision on the prejudgment remedy motion, I denied the motion (doc. # 103) as moot. This ruling and order is limited only to the application for prejudgment remedy (doc. # 4), motion for disclosure (doc. # 5), and motion for *pendente lite* relief (doc. # 96).

## C. *Factual Findings*

Everspeed chartered the *Bunga Saga 9*, a bulk cargo carrier, from Malaysian International Shipping Co., re-let the vessel to Raffles Shipping Investments, and then re-let the vessel back to itself. *See* 3/30/10 Hearing Tr. at 56 (hereinafter "Tr."). Phillip Syrrist of Skaarup Shipbrokers introduced Keith Denholm, Everspeed's commercial manager, to SFS for the purpose of chartering the *Bunga Saga 9*. *Id.* at 56–57. Denholm was unfamiliar with SFS and sought information concerning SFS's financial ability to perform under the terms of the charter party. *Id.* at 57, 61. Syrrist provided Denholm with a narrative background on SFS. *See* Hrg. Ex. 18. The narrative indicated that SFS is registered in Hong Kong with a commercial operation office in Pudong, Shanghai, China and is a joint venture between Skaarup Shipping USA and Fortune Ocean Shipping Ltd. *Id.* Zhu, then Vice President of SFS, e-mailed Denholm on March 7, 2008 and indicated that SFS owned the "Moon Sea and Georgia S as well as 2 cape size bulk carriers under construction." *See* Hrg. Ex. 43. In light of Denholm's lack of familiarity with SFS, he requested a third-party guarantee of the charter-party from Skaarup of Greenwich, Connecticut. Tr. at 64. In a series of electronic communications between Denholm and Syrrist dated March 6, 2008, Denholm made clear that Everspeed required a performance guarantee and requested Skaarup Shipping's "full style." *See* Ex. 10. Syrrist responded "see clause 'XYZ' .... which to be guaranteed by Skaarup Shipping International ........ Mainstreet USA." Denholm replied "ok." *Id.* This request was communicated to Zhu via email. *See* Ex. 12–1. In a similar electronic exchange, Syrrist asked Zhu "hey did u [sic] talk to Thomas or get any letter regarding Skaarup Int. Guaranteeing Performance?" to which Zhu responded "don't worry. remember I am VP of Skaarup, I can make decision for this matter." *See* Ex. 11. Syrrist then responded "OKIEDOKIE ..." and stated that he used to the be the vice president of skaarup." *Id.* On March 7, 2008, Zhu emailed Syrrist and Bene a "drafted guarantee wording for Owners [sic] review and acceptance." *See* Ex. 16–1. The drafted guarantee is undated and purports to bind SSI as the primary obligor on the *Bunga Saga 9* charter party. In other words, should SFS fail to fully perform on the charter party agreement, the drafted letter of guarantee provides that Everspeed may undertake proceedings against SSI without first exercising any rights under the charter party with SFS. The letter also provides that English law is the choice of law, all claims will be litigated in the high court of justice in Singapore and that SSI will appoint solicitors in London to accept service of process on SSI's behalf. The drafted guarantee states that it is on behalf of SSI Corporation, and contains a typed name line for Thomas Bene and typed title line of President. *Id.* This same undated document bearing no written signature was submitted to Denholm and accepted by Everspeed as an executed guarantee. Tr. at 70. The fixture recap note dated March 9, 2008 and drafted by Syrrist identified SSI as the guarantor. *See* Hrg. Ex. 5. Denholm testified that, under industry practice, a clean fixture note is a contract and represents an agreement on the charter party terms. Tr. at 66. At a March 2008 reception at the Indian Harbor Yacht

Club, Denholm thanked Bene for facilitating the guarantee. *Id.* at 84. Denholm testified that Bene acknowledged the thank you. *Id.*

On March 9, 2008, Everspeed and SFS executed the charter party. *See* Ex. A. The executed charter party provides for the lease of the *Bunga Saga 9* at a rate or $56,500.00 per day for a term not to end before December 15, 2010. *Id.* Clause 17 of the charter party states that it is to be construed under English law and any disputes arising out of or in connection with the charter party shall be referred to a three-person arbitration panel in Singapore. *Id.* The vessel was off-hire for a period of time beginning January 18, 2009 due to an auxiliary engine breakdown in the Amazon River. Tr. at 87; and Ex. D, Annex A at 4 ¶ 14. The parties dispute the duration of the off-hire. SFS maintains that vessel was off-hire in excess of fifteen days, which would entitle it to terminate the charter party. Everspeed asserts the off-hire term was less than fifteen days. SFS terminated the charter-party on February 6, 2009. Tr. at 87; and Ex. D, Annex A at 10–11 ¶ 35(b)(4). Everspeed commenced arbitration proceedings in Singapore (the "arbitration") against for SFS for the termination of charter party. SFS filed a counterclaim against Everspeed in the arbitration.

In March 2009, Denholm met with Skaarup, Syrrist and Bene in Greenwich, Connecticut to discuss the guarantee. Tr. at 98. At that time Skaarup denied the existence of the guarantee; Syrrist and Bene remained silent on the issue. Tr. at 100. In August 2009, Denholm pressed Syrrist on the domicile of SSI. Tr. at 109. Syrrist responded "Skaarup Shipping International Monrovia, Liberia." Tr. at 109; see also Ex. 34.[7] Everspeed filed a writ against SSI in Singapore High Court. Tr. at 33. Initially, SSI refused to accept service or appoint a solicitor in London for the purpose of accepting service of that writ, taking the position that a performance guarantee did not exist. Tr. at 34–37. Counsel for SSI has since represented to the court that SSI is prepared to accept service of process in connection with the writ filed in the Singapore High Court concerning the alleged breach of the performance guarantee. Tr. at 41.

## II. Prejudgment Remedy Standard in Maritime and Admiralty Actions

■ Typically actions for attachment are brought under Rule B(1)(a) Supplemental Rules for Certain Admiralty and Maritime Claims, which provides that:

> If a defendant is not found within the district when a verified complaint praying for attachment and the affidavit required by Rule B(1)(b) are filed, a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property—up to the amount sued for—in the hands of garnishees named in the process.

Each of the defendants in this case, with the exception of SFS, resides or has a principal place of business in Connecticut; accordingly, Rule B(1)(a) is inapplicable.[8] Rule B(1)(e) of the Supplemental Rules for Certain Admiralty and Maritime Claims provides that "the plaintiff may invoke state-law remedies under Rule 64 for seizure of person or property for the purpose of securing satisfaction of the judgment." Notice must be served in a manner author-

---

7. It is clear from the record that Syrrist misstated the domicile of SSI. SSI–Liberia dissolved in 2000. The only SSI entity relevant to this litigation is SSI–Vanuatu.

8. SFS has filed three dispositive motions in the case and failed to raise the defense of personal jurisdiction, it has thus waived the defense and submitted to the jurisdiction of the court. *See* Fed.R.Civ.P. 12(h)(1).

ized by Rule 4 of the Federal Rules of Civil Procedure. Rule 64 of the Federal Rules of Civil Procedure permits a plaintiff to utilize the state prejudgment remedies available to secure a judgment that might ultimately be rendered in an action. *See Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 423, 436 n. 10, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974); *Cordoba Shipping Co., Ltd. v. Maro Shipping Ltd.,* 494 F.Supp. 183, 186 (D.Conn.1980). Rule 64 provides in pertinent part:

> At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment. But a federal statute governs to the extent it applies.

Accordingly, Connecticut General Statutes § 52–278a et seq. governs the plaintiff's application. Connecticut's prejudgment remedy statute "provides that a plaintiff suing for a money judgment may attach a defendant's real or personal property during litigation, if the plaintiff follows the statutory procedures designed to protect the defendant." *Cordoba,* 494 F.Supp. at 186

The defendants contend that Everspeed's application is defective in light of the Connecticut Supreme Court's holding in *Cahaly v. Benistar Property Exchange Trust Co., Inc.,* 268 Conn. 264, 842 A.2d 1113 (2004). The *Cahaly* Court held, in sum, that an application for a prejudgment remedy is not a stand-alone pleading and must be premised on an underlying cause of action. *Id.* Defendants maintain that the complaint underlying Everspeed's application fails to allege a single independent cause of action that would support a prejudgment remedy application. Plaintiff maintains that, at the very least, it has raised a claim of alter ego that supports prejudgment relief. I disagree. For the following reasons, plaintiff's application for prejudgment remedy is denied.

The issue before the *Cahaly* Court was "whether the prejudgment remedy statutes are satisfied by attaching to the application an unsigned writ of summons and complaint that constitutes a prospective action in Connecticut that will be brought to enforce a foreign judgment, prior to the foreign judgment's having been obtained." *Cahaly,* 268 Conn. at 274–75, 842 A.2d 1113. In *Cahaly* a Connecticut plaintiff filed suit in the Massachusetts superior court against Benistar Ltd., a Connecticut domiciled business. Shortly thereafter the plaintiff filed an application for a prejudgment remedy in the Hartford Superior Court seeking to attach $1.1 million. The court granted the motion in the amount of $500,000. The Appellate Court affirmed.

The Connecticut Supreme Court reversed, unequivocally holding that section 52–278 does not apply to potential future actions. "Put another way, the 'action' referred to in § 52–278c(a)(1) must be an action that the plaintiff is about to bring in Connecticut upon which a Connecticut court will render judgment. It does not include a future judgment on an action that the plaintiff has filed or proposes to file in another state." *Id.* at 274, 842 A.2d 1113. The Court observed that, when a plaintiff brings an action to enforce a judgment based on upon an anticipated future foreign judgment, "there is no possibility that a 'judgment will be rendered in the matter in the plaintiff's favor' by the courts of Connecticut." *Id.* at 274–75, 842 A.2d 1113.

Everspeed argues that the instant matter is distinguishable from *Cahaly* in that the plaintiff in *Cahaly* framed the complaint solely as an action to enforce an as-yet-unawarded judgment in a foreign action. *Id.* at 277–78, 842 A.2d 1113; doc. 82

at 8. In support of its position, Everspeed directs the court to the Connecticut Appellate Court's holding in *General Electric Capital Corp. v. Rizvi,* 113 Conn.App. 673, 971 A.2d 41 (Conn.App.Ct.2009).

In *General Electric* the Court addressed a similar factual scenario. The lessor of an aircraft brought an action in the first instance in Puerto Rico against the lessee and lease guarantors, seeking damages for breach of the lease and enforcement of the guarantee. The plaintiff then filed an application for prejudgment remedy of attachment in Connecticut. The *General Electric* defendants argued that *Cahaly* controlled and that plaintiffs were merely seeking to attach in the event of success on the foreign action. The *General Electric* trial court disagreed and held that the plaintiff's complaint embodied a cause of action independent from the action in Puerto Rico and therefore a prejudgment remedy of attachment could issue. The Appellate Court affirmed, holding that:

> Upon our review of the record, given our limited scope of review, we cannot conclude that the decision of the court denying the motion to dismiss constituted clear error. It is evident from the record that it was not error for the court to conclude that the application was brought in contemplation of an independent action on the underlying guarantee rather than to enforce a foreign judgment, prior to the foreign judgment's having been obtained, as precluded by *Cahaly.* The plaintiff's unsigned complaint, which was attached to its application for a prejudgment remedy, alleged that the defendants had breached the terms of the personal guarantee and that the plaintiff was thereby injured and, as a result, sought damages, interest, attorney's fees and costs. Despite the plaintiff's inartful drafting of the complaint attached to its application, in which it unnecessarily referenced the Puerto Rico action and incorporated by reference its affidavit submitted in support of its application, the complaint plainly states that the prejudgment remedy was sought for a contemplated domestic action on the guarantee. Therefore, we cannot say that the court's decision constituted clear error.

*Id.* at 679–80, 971 A.2d 41.

I am not persuaded that *General Electric* controls here. Although Everspeed raised a breach of contract in its complaint, that claim will be litigated in Singapore, pursuant to the forum selection clause in the parties' agreement. Thus, unlike the plaintiff in *General Electric,* Everspeed will be precluded from litigating its breach of contract claim in Connecticut. With respect to SFS, the arbitration proceedings are underway in Singapore, consistent with Clause 17 of the charter party, which selected that forum.

██ In this circuit, forum selection clauses in international disputes are presumptively enforced unless that enforcement would be unreasonable, unjust or the clause is invalid. *See Aguas Lenders Recovery Group v. Suez, S.A.,* 585 F.3d 696 (2d Cir.2009). Nothing in the record suggests that I should decline to enforce the forum selection clauses embodied in the charter party and the performance guarantee, which provide for resolution of disputes in overseas tribunals. To the extent that Everspeed relies on the Court's holding in *Cordoba Shipping Co. v. Maro Shipping Ltd.,* 494 F.Supp. 183 (D.Conn.1980), in support of authority to award a prejudgment remedy in the aid of a foreign action, plaintiff does so erroneously. *Cordoba* was decided twenty-four years before the Connecticut Supreme Court's ruling in *Cahaly,* which necessarily controls on the question of the state prejudgment remedy statute.

■ Under the circumstances, an award of a prejudgment remedy pursuant to section 52–278 would be counter to the of the holding of *Cahaly,* because, there is no independent cause of action for breach of the charter party that Everspeed can bring against SFS in any Connecticut court today and prevail. Therefore, any prejudgment remedy issued under section 52–278 on account of the alleged breach of the charter party would be in aid of an action that the plaintiff has filed in another forum. Likewise, with respect to Everspeed's claim against SSI for breach of the performance guarantee, no claim will proceed in this court. SSI's counsel has represented that it is consenting to the Singapore High Court proceedings, consistent with the forum selection clause in the disputed guarantee. In this case, "there is no possibility that a 'judgment will be rendered in the matter in the plaintiff's favor' by the courts of Connecticut." *Cahaly,* 268 Conn. at 274, 842 A.2d 1113.

■ The remaining issue is whether Everspeed's request to pierce the corporate veil serves as an independent cause of action in the instant proceeding and is thus a valid basis for an award of the prejudgment remedy. Everspeed alleges, in its amended complaint, that the various Skaarup defendants only loosely adhere to the corporate form and the commonality of the principals and repeated failure to clarify each entity's corporate identity support a claim for alter ego. It asks that I pierce the corporate veil at this juncture in order to grant the application for prejudgment remedy and order disclosure. Defendants maintain that a claim for alter ego does not qualify as an underlying cause of action under Connecticut law and cannot therefore support the prejudgment remedy application. Everspeed counters that I should apply federal maritime corporate veil piercing law to its alter ego claim and that courts in this district have pierced the veil in advance of an award.[9]

■ I need not decide the appropriate substantive law to apply to Everspeed's claim of alter ego. The only relevant inquiry at this juncture is whether alter ego/veil piercing is an independent cause of action to support an application for a prejudgment remedy. Ordinarily, an order piercing the corporate veil is an equitable determination allowing for the enforcement of a judgment against a party not primarily liable. Although the plaintiff has framed its alter ego claim as an independent cause of action, the "claim" is nothing more than a remedial request to enforce a judgment against a party not primarily liable. *See generally Macomber v. Travelers Property and Cas. Corp.,* 261 Conn. 620, 623 n. 3, 804 A.2d 180 (2002). Indeed, in Connecticut, the concept of piercing the corporate veil is equitable in nature and not itself treated as an independent cause of action. *Intermed, Inc. v. Alphamedica, Inc.,* 2009 WL 5184195, *8 (D.Conn.2009); *cf. Naples v. Keystone Bldg.,* 295 Conn. 214, 990 A.2d 326 (2010); *Angelo Tomasso, Inc. v. Armor Const. & Paving, Inc.,* 187 Conn. 544, 555, 447 A.2d 406 (1982); *McCarthy v. State Five Industrial Park,* 2009 WL 104287 (Conn.Super.Ct.2009). The Connecticut Supreme Court recently observed that:

> [o]rdinarily the corporate veil is pierced only under exceptional circumstances, for example, where the corporation is a mere shell, serving no legitimate purpose, and used primarily as an intermediary to perpetuate fraud or promote the corporation to perpetrate a fraud or have dominated and disregarded corporate form. *See Kirno Hill Corp. v. Holt,* 618 F.2d 982, 985 (2d Cir.1980).

9. Federal maritime corporate veil piercing law is a federal common law doctrine and in order to pierce the corporate veil in federal maritime law, the defendant must have used

injustice. The improper use of the corporate form is the key to the inquiry, as '[i]t is true that courts will disregard legal fictions, including that of a separate corporate entity, when they are used for fraudulent or illegal purposes. Unless something of the kind is proven, however, to do so is to act in opposition to the public policy of the state as expressed in legislation concerning the formation and regulation of corporations. . . . The case law applying the principles articulated in the leading case of *Angelo Tomasso, Inc.* . . . is illustrative with respect to the equitable nature of piercing the corporate veil, and shows that courts decline to pierce the veil of even the closest corporations in the absence of proof that failure to do so will perpetrate a fraud or other injustice.' *Naples,* 295 Conn. at 233–34, 990 A.2d 326.

The court in *McCarthy* engaged in a comprehensive analysis of the treatment of veil piercing in Connecticut. Every decision discussed in *McCarthy* involved a fact pattern in which the party pursuing the veil piercing claim sought either to enforce an already obtained judgment or to extend liability to another party with respect to independent causes of action. A review of the Court's holding in *Naples* reveals a similar analysis. *Naples,* 295 Conn. at 231–38, 990 A.2d 326. Additionally, maritime cases brought in this district in which alter ego/veil piercing claims were raised also fail to support the notion that, at the prejudgment remedy stage, a request to pierce the corporate veil is a stand-alone claim that could support an award if a prejudgment remedy. *See Bergesen v. Lindholm,* 760 F.Supp. 976 (D.Conn.1991) (piercing the corporate veil at prejudgment stage where plaintiffs were proceeding in the District of Connecticut on claims of breach of contract, fraud, tortious interference, and civil conspiracy); *Northern Tankers v. Backstrom,* 967 F.Supp. 1391 (D.Conn.1997) (piercing the corporate veil in action to collect on arbitration award).

■ I recognize and understand Everspeed's argument that the various Skaarup entities are independent in name only and for all practical purposes operate as one. Indeed, should Everspeed succeed in the Singapore proceedings against SFS and SSI, Everspeed's veil piercing claims may well have merit. At the prejudgment remedy stage, however, Connecticut law does not recognize alter ego as an independent cause of action. To the extent that the prejudgment remedy application is based on an anticipated judgment from another jurisdiction, it is premature; to the extent the prejudgment remedy application is based on a "claim" of alter ego alone, there is no independent cause of action to support it. Accordingly, the request for a prejudgment remedy pursuant to section 52–278 et seq. is denied.

### III. *Pendente Lite* Relief

On April 9, 2010, plaintiff supplemented its application for a prejudgment remedy under section 52–278 with an application for an order *pendente lite* in aid of the arbitration against SFS. Conn. Gen.Stat. §§ 50a–109, 52–422. Section 50a–109 of the Connecticut General Statutes provides that "[u]nless otherwise provided in the arbitration agreement, it is not incompatible with an arbitration agreement for a party to request from a court, before or during arbitral proceedings, an interim measure of protection and for a court to grant such measure." And section 52–422 provides that:

> At any time before an award is rendered pursuant to an arbitration under this chapter, the superior court for the judicial district in which one of the parties resides or, in a controversy concerning land, for the judicial district in which the land is situated or, when said court is

not in session, any judge thereof, upon application of any party to the arbitration, may make forthwith such order or decree, issue such process and direct such proceedings as may be necessary to protect the rights of the parties pending the rendering of the award and to secure the satisfaction thereof when rendered and confirmed.

There is no dispute that, in this circuit, "federal courts have both the jurisdiction and authority to grant injunctions and provisional remedies in the context of pending arbitrations, including international arbitrations." *See Bahrain Tele. Co. v. Discoverytel, Inc.*, 476 F.Supp.2d 176, 180 (D.Conn.2007). What is not clear, however, is whether I have the authority to provide Everspeed the relief it seeks under the circumstances of this case. SFS maintains that I lack the authority over the *pendente lite* application because neither SFS nor Everspeed resides within the court's jurisdiction. Everspeed has taken the position that I have jurisdiction over the claim on the following basis: first, SFS's failure to raise lack of personal jurisdiction in the first instance grants the court personal jurisdiction over SFS, thus allowing an award of *pendente lite* relief against SFS; and, second, the language in section 52–422 limiting the filing of an application to a jurisdiction in which one party resides is merely a venue clause. I find neither of Everspeed's arguments persuasive.

Although the court has personal jurisdiction over SFS due to its waiver, personal jurisdiction is not enough. The court must also be authorized by statute to grant *pendente lite* relief. SFS correctly argues that the residency requirement of the statute has not been satisfied.

Relying on well established rules of statutory construction, the language of section 52–422 is plain and unambiguous with respect to its residency requirement. *See*

*Office of Consumer Counsel v. Department of Public Utility Control*, 246 Conn. 18, 29, 716 A.2d 78 (1998). The statute reads, in pertinent part, that "[a]t any time before an award is rendered pursuant to an arbitration under this chapter, the superior court for the **judicial district in which one of the parties resides** ... upon application of any party to the arbitration, **may make** forthwith **such order** ... as may be necessary to protect the rights of the parties pending the rendering of the award and to secure the satisfaction thereof when rendered and confirmed." Conn. Gen. Stat. § 52–422 (emphasis added). The Connecticut Supreme Court has held that "an application for an order *pendente lite* pursuant to 52–422 is a special statutory proceeding. The statute confers a definite jurisdiction upon a judge and it defines the conditions under which such relief may be given.... In such a situation jurisdiction is only acquired if the essential conditions prescribed by statute are met. If they are not met, the lack of jurisdiction is over the subject-matter and not over the parties." *Goodson v. State*, 232 Conn. 175, 180, 653 A.2d 177 (1995).

Section 52–422 does not direct parties seeking *pendente lite* relief to a particular courthouse, it authorizes only courts in "the judicial district" in which one of the parties resides to "make ... such order." By limiting the courts that "may make" an order under section 52–422, the Legislature was prescribing judicial authority. That authority was restricted to courts in a manner defined by the residence of the parties or the location of land in a controversy concerning land. Thus, the plain language of section 52–422 does not grant a court the authority to issue a *pendente lite* order unless the residency or location of land requirement is satisfied.

During an April 26, 2010 telephone conference with the parties, I pressed Ever-

speed to provide the court with support for its position that section 52–422 is available to foreign parties engaged in foreign arbitration seeking to attach foreign assets. Everspeed, in fax to the court dated April 26, 2010, argued, principally, that the court's holding in *Lyons Hollis Assoc., Inc. v. New Technology Partners, Inc.,* 278 F.Supp.2d 236 (D.Conn.2003), supports the granting of *pendente lite* relief where one party is a foreign corporation. Everspeed also, in an effort to overcome the residency hurdle, stated that its commercial agent, PCL, maintains a place of business in Stamford, Connecticut.[10]

■ A review of the various decisions examining section 52–422 in depth, including *Lyons Hollis,* and reveals no support for plaintiff's position. *See Nusbaum & Parrino, P.C. v. Collazo De Colon,* 618 F.Supp.2d 156 (D.Conn.2009); *Bahrain Tele. Co. v. Discoverytel, Inc.,* 476 F.Supp.2d 176, 180 (D.Conn.2007); *Insurity, Inc. v. Mutual Group, Ltd.,* 260 F.Supp.2d 486 (2003); *Lyons Hollis Assocs., Inc. v. New Technology Partners, Inc.,* 278 F.Supp.2d 236 (D.Conn.2003) (plaintiff was a Connecticut corporation); *New England Pipe Corp. v. Northeast Corridor Foundation,* 271 Conn. 329, 857 A.2d 348 (2004); *Goodson v. State,* 232 Conn. 175, 653 A.2d 177 (1995); *Dewart v. Northeastern Gas Trans. Co.,* 140 Conn. 446, 101 A.2d 299 (1953). The language in *Goodson,* quoted above, is persuasive and I conclude that I lack the authority to consider the merits of Everspeed's section 52–422 motion. As previously stated, neither Everspeed nor SFS reside within the state of Connecticut; neither party possess assets found within the state; nor is the arbitration proceeding in Connecticut. There is nothing to suggest that the Connecticut legislature, in fashioning section 52–422 intended that completely foreign

parties engaged in a foreign arbitration would consume Connecticut's scarce judicial resources to secure a prospective arbitral award by attaching foreign assets.

■ Even assuming that I am mistaken about whether this court has the authority to consider the motion, I find that the plaintiff has failed to demonstrate that it is entitled to relief. *Pendente lite* relief should only be granted in extraordinary circumstances and only where the plaintiff's rights will "be lost irretrievably in the absence of judicial intervention." *See Lyons Hollis,* 278 F.Supp.2d at 245. As the court in *Bahrain* observed:

> The Connecticut Supreme Court has had occasion to consider the requirements for issuance of a provisional remedy under § 52–422, and that court has made it clear a provisional remedy under § 52–422 should be granted "only in extraordinary circumstances." Examining the language of § 52–422, which authorizes courts to issue such process "as may be necessary to protect the rights of the parties pending the rendering of an award," the Connecticut Supreme Court held that this language evidenced the legislature's intent to empower courts to issue *pendente lite* orders only when such relief was "absolutely required," "essential," or "indispensable" to "protect" or "safeguard" the rights of a party to a pending arbitration.

*Bahrain,* 476 F.Supp.2d at 186.

■ Everspeed provided the court with numerous exhibits concerning the various Skaarup entities, but it failed to the provide the court with anything more than conclusory allegations and insinuations that SFS is winding down its business and operating *Cross Ocean* as a shell corporation through its former Vice President

---

10. Everspeed does not become a resident of Connecticut for purposes of Conn. Gen.Stat.

§ 52–422 because it employs an agent with an office in the state.

Jonathan Zhu. Accordingly, plaintiff's motion for *pendente lite* relief (doc. # 96) is **denied.**

### IV.  Conclusion

For the foregoing reasons plaintiff's application for prejudgment remedy (**doc. # 4**) against all defendants is **denied.** The motion for disclosure (**doc. # 5**) is **denied as moot.** The motion for *pendente lite* relief (**doc. # 96**) is **denied.** In the event that SSI fails to appear in the Singapore High Court with respect to the claim concerning the performance guarantee and that claim will instead proceed in this court, plaintiff is invited to renew its application for a prejudgment remedy.

It is so ordered.